[Civ. No. 31454. First Dist., Div. Four. Apr. 27, 1973.]

GENE S. POSCHMAN, Plaintiff and Appellant, v.
GLENN S. DUMKE, as Chancellor, etc., et al.,
Defendants and Respondents.

## Counsel

Cooley, Godward, Castro, Huddleson & Tatum and Michael Traynor for Plaintiff and Appellant.

Charles C. Marson and Donald H. Maffly as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, David J. Bowie, Deputy Attorney General, Norman L. Epstein and Larry J. Frierson for Defendants and Respondents.

## Opinion

**GOOD, J.***—On August 2, 1971, appellant Gene S. Poschman filed a petition seeking administrative mandamus, declaratory relief, ordinary mandamus, and damages under state law and the federal Civil Rights Act against respondents herein for denying him (appellant) tenure at the California State College at Hayward (hereinafter "college"), where he had taught political science. On August 6, 1971, the court filed an alternative writ of mandamus. On September 21, 1971, respondents filed a demurrer to the petition.[1] On December 9, 1971, the trial court filed a memorandum of decision which held that administrative mandamus was not available because "California law does not require a hearing for non-tenured academic employees whose employment is not renewed"; that appellant "failed to state a cause of action in 'ordinary mandamus' because he has not alleged facts sufficient to show that respondents are under a mandatory duty to

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Respondents also answered the petition.

grant him tenure"; that respondents have "broad discretion . . . on determinations of general teaching capabilities and suitabilities" which court decisions have consistently upheld; that "[t]he only right that such probationary employee has is the right to not be denied reappointment for reasons that constitute a violation of his constitutional rights" (usually involving First Amendment privileges). The trial court determined that there was no significant dispute on the facts of the case. Respondents' general demurrer to the petition was sustained without leave to amend. On December 22, 1971, judgment of dismissal was entered against appellant and this appeal followed.

The petition and complaint incorporate the various orders, regulations and procedural records referred to in the following precis of the facts. Appellant was a probationary (nontenured) member of the faculty at California State College at Hayward, appointed yearly since September 1965. On May 13, 1970, the promotion, tenure and retention committee of the department of political science unanimously recommended that appellant be awarded tenure and promoted from assistant to associate professor. On May 18, the department chairman recommended against tenure. On June 1, the committee on promotion and tenure of the school of arts, letters and social sciences took a position against tenure by a six-to-three vote with two abstentions.[2] On June 10, the college-wide committee on promotion and tenure recommended that appellant be granted tenure. On June 16, the vice president for academic affairs recommended against tenure. On June 19, the college president concurred. On July 28, appellant requested a grievance hearing concerning the denial to him of tenure and promotion. On August 19, 20, 21, 25, 26, and 27, a hearing was held before the college grievance committee. On August 28, the college grievance committee unanimously recommended that appellant be granted tenure and considered for promotion. On September 8, the college president overruled the college grievance committee and denied tenure and consideration for promotion. On September 18, appellant appealed from the decision of the president.

Executive Order 56, promulgated by the trustees on June 27, 1968, and in effect on September 18, 1970, incorporates procedures for the initiation, hearing and disposition of grievances of a faculty member or employee who believes he has been dealt an injustice in matters of individual rights, benefits, working conditions, appointment, reappointment, tenure, promotion and reassignment. In brief, the grievant and any party directly involved may represent himself or be represented by any person he selects and may present statements and ask questions of each other and the

---

[2] A position against tenure implies no promotion.

witnesses. Qualifications are specified for members of the grievance committee who may determine whether a case shall be heard and whether or not it shall accept written statements in lieu of personal appearances by witnesses. Provision is made for a record of the hearing. A report with recommendations for settlement of the dispute is filed with the president of the college, whose decision is final on each campus. However, the president's decision, except in rare instances and for compelling reasons, stated in detail to the grievant and the committee, must concur with the committee's report. If the president does not concur, the grievant may appeal his decision to the Chancellor who shall appoint a committee of three from a previously selected panel, acceptable to the chairman of the academic senate, to review the case and arrive at a decision that shall be binding upon all parties. In April 1969, grievance procedures in effect on the Hayward campus were generally similar but more detailed.

On September 23, 1970, the board of trustees of the California state colleges held a meeting. By emergency regulation, they empowered the Chancellor to revise grievance procedures. By nonemergency regulation, while revoking the present grievance procedures, the trustees ordered that prevailing grievance procedures were to apply to all cases pending *except that the decision of the Chancellor's review panel would only be advisory to the Chancellor whose decision would be final.* On September 30, the Chancellor, while adopting new grievance procedures pursuant to the emergency regulation, ordered that the prior grievance procedures were to apply to all cases pending with the exception that the decision of the Chancellor's review panel would be only advisory, the Chancellor reserving the right of final decision; however, the Chancellor's decision must agree with the review panel except in rare instances, for compelling reasons stated in writing.

On March 23, 1971, the Chancellor's review panel unanimously recommended that appellant be granted tenure and considered for promotion. On June 1, 1971, the Chancellor overruled the decision of his review panel and ruled that appellant be denied tenure. The Chancellor also remanded appellant to the college for an additional probationary period during which a more thorough tenure evaluation would be possible. Although it is not in the record, the briefs of both parties state that appellant was granted tenure in March 1972.

The appeal poses the questions that follow.

I. *Did appellant's complaint state a cause of action?*

*Yes.* ■ Administrative mandamus lies for "the purpose of inquiring

into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, . . ." (Code Civ. Proc., § 1094.5; *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 598-599 [297 P.2d 967].)

The facts alleged in the massively documented petition and of which judicial notice may be taken establish: The trustees of the California state colleges are authorized to provide, as we have noted, rules governing various employee matters, including tenure. (Ed. Code, § 24201.) Pursuant to this authorization, the trustees enacted regulations concerning tenure for probationary teachers and also allowed each college to develop its own tenure procedure subject to meeting certain basic requirements set forth in California Administrative Code, title 5, sections 42701-42703, 43560-43567. Such procedure was developed by California State College at Hayward. ■ The established procedures required a hearing with testimony either oral or written, a dispositive recommendation or ruling, and provided that records be kept of the proceedings. The hearing of appellant's grievance conducted in accordance with the rules promulgated by the trustees and those in effect on the Hayward campus was a hearing before an administrative body and mandamus was the proper procedure for its review, including the disposition of the appeal to the Chancellor. (*Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 860-862 [72 Cal.Rptr. 756].) It does not matter that the grievance hearing is characterized by executive order as "in no sense a trial"; a hearing suffices for administrative mandamus. (Cal. Administrative Mandamus (Cont.Ed.Bar) p. 40.) Although appellant as a probationary academic employee may not have had an "expectancy" of continued employment and no right not to be denied tenure (*Toney* v. *Reagan* (N.D. Cal. 1971) 326 F.Supp. 1093), he had, even under most minimal due process, a right to have his status determined in accordance with the valid rules and regulations established by the board of trustees or the administration on the local campus applicable thereto at the time. We agree that the delicate matter of tenure should be determined by the academic community and that courts should be reluctant to intervene. But where a determination is made in violation of its own established rules and regulations or under regulations that are invalid under statutes that bind the academic community (question II, below), it cannot be argued that no legal remedy exists. In the circumstances reflected in the petition the case falls within the exception noted in *Wong* v. *Regents of University of California* (1971) 15 Cal.App.3d 823, 830 [93 Cal.Rptr. 502], where it is recognized that

courts may (and must) interfere in the management of a school's affairs if " ' "there has been a manifest abuse of discretion or where [the school officials'] action has been arbitrary or unlawful," . . .' "

In connection with the issues tendered by the pleadings, the decisions relied upon by respondents are not in point because, in each case, the appellate courts had examined the record before denying the writ. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 781-782 [97 Cal.Rptr. 657, 489 P.2d 537]; *Stanton* v. *Dumke* (1966) 64 Cal.2d 199, 207 [49 Cal. Rptr. 380, 411 P.2d 108].)

If, however, the decision of the Chancellor's review panel recommending tenure was final, then the Chancellor was under a mandatory duty, not involving any discretion, to grant tenure. The petition in that circumstance states a cause of action for ordinary mandamus. (Code Civ. Proc., § 1085; *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; *May* v. *Board of Directors* (1949) 34 Cal.2d 125, 133-134 [208 P.2d 661].) A justiciable issue was presented by the pleadings and it was error to sustain the demurrer without leave to amend.

II. *Did the Chancellor have the authority to overrule the decision of the Chancellor's review panel granting appellant tenure?*

*No.* Prior to September 23, 1970, the Chancellor had no power to overrule the decision of the Chancellor's review panel on grievance tenure decisions. The only two ways in which the Chancellor may have been given the power to overrule the decision of the Chancellor's review panel are: *First,* the Chancellor's Executive Order No. 112, section 1.3, adopted September 30, 1970, provided that the review panel's decision is only advisory to the Chancellor even in pending cases. *Second,* the trustee's resolution RFSA 70-24, adopted as a regular nonemergency measure on September 23, 1970, provided for the repeal of existing grievance procedures, and provided that the decision of the Chancellor's review panel is only advisory to the Chancellor even in pending cases. But if both alternatives fail, the Chancellor could not overrule the decision of the panel. For the reasons stated below, it is our opinion that neither alternative furnishes valid support for the Chancellor's override of the review committee's decision.

Executive Order No. 112, section 1.3, reads as follows: "Grievance proceedings under the Interim Procedures for Handling Grievances and Personnel Complaints of Academic and Administrative Personnel (issued in

1961) or under Executive Orders 56 or 80, which were commenced but, not concluded by September 30, 1970, shall continue under the procedures of the respective Interim Procedures or Executive Order, except that the Chancellor's Review Panel shall be advisory to the Chancellor and the Chancellor shall make the final decision. A proceeding shall be considered to have been commenced under Executive Order 56 or 80, as the case may be, on the date a formal request for a grievance proceeding was filed with the appropriate college officer or agency."

This order was promulgated pursuant to emergency regulation RFSA 70-23 of September 23, 1970, providing: ". . . the Board of Trustees of the California State Colleges, acting under the authority of, and to implement, interpret, and make specific, Education Code Sections 22600, 22604, 23604, and 24201, and pursuant to the Administrative Procedure Act, that this Board hereby adds to and amends its regulations in Subchapter 6 of Chapter 1, Part V, Title 5 of the California Administrative Code, as hereinafter set forth, such action being emergency action, to take effect immediately upon filing with the Secretary of State and with the Rules Committee of each House of the Legislature:

". . . . . . . . . . . . . . . .

"2. Section 42714 is added to Article 2 to read:

"42714. Grievance Procedures for Academic Personnel. The Chancellor shall prescribe, and may from time to time revise, Grievance Procedures for Academic Personnel of the California State Colleges. These procedures may be utilized by all full-time tenured and probationary academic employees, including those on leave of absence with or without pay. The Trustees may, on their own motion, review grievance matters under this Section. The Chancellor shall report to the Board on procedures issued or revised purusant to this Section."

The statement of emergency in RFSA 70-23 reads as follows:

"FINDING OF EMERGENCY

"The Board of Trustees finds that an emergency exists and that the foregoing regulation is necessary for the immediate preservation of the public health, safety or general welfare. The facts constituting such emergency are as follows:

"It is essential to the discharge of the academic program of the California State Colleges that personnel practices be maintained at a high

level of effectiveness. Of crucial importance to the attainment of that objective is an efficient and fair method of promptly resolving legitimate grievances of academic employees.

"These considerations of good personnel policy require that this resolution, adopted with that objective be effective for the entire 1970-71 academic year, rather than to just a part of that year. Unless this resolution is adopted as an emergency measure as proposed, it will not so apply, with the result that two separate grievance systems would be operative in the fall term. The resulting confusion could well be productive of just the opposite effect on academic personnel practices from that intended.

"In order to implement and interpret the foregoing powers, duties and responsibilities conferred on the Board of Trustees, it is necessary that the foregoing resolutions be adopted to become effective immediately upon filing with the Secretary of State and with the Rules Committee of each House of the Legislature.

"The said regulations are therefore adopted as emergency regulations to take effect immediately upon filing with the Secretary of State and with the Rules Committee of each House of the Legislature."

■ Government Code section 11440 authorizes courts to declare regulations invalid "in the case of an emergency regulation . . . upon the ground that the facts recited in the statement [of emergency] do not constitute an emergency within the provisions of Section 11421(b)." Government Code section 11421, subdivision (b), provides that a regulation may be adopted or repealed as an emergency "[i]f in any particular case the state agency makes a finding, including a statement of facts constituting the emergency in writing that the adoption of a regulation or order of repeal is necessary for the immediate preservation of the public peace, health and safety or general welfare, . . ." Courts are not conclusively bound by an agency's determination that an emergency exists, although it is recognized that what constitutes an emergency is primarily a matter for the agency's discretion. (*Schenley Affiliated Brands Corp.* v. *Kirby* (1971) 21 Cal.App.3d 177, 194-195 [98 Cal.Rptr. 609].) There may be abuse of the emergency power when the enacting agency repeatedly and habitually resorts to it without a credible statement of genuine emergency. (*Id.* at p. 194.) The finding of and statement of facts constituting an emergency must be more than mere "statements of the motivation" for the enactment and provide an adequate basis for judicial review. (*California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800,

812 [fn. 16], 815-816 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735]; cf. California Senate Interim Committee on Administrative Regulations, Second Preliminary and Partial Report (1953) 1 Appendix to Sen. J.) The recitals in the resolution in question may be a sound declaration of policy but do not reflect a crisis situation, emergent or actual, unless the possibility of favorable action by the review committee whose appointment was required by the pendency of appellant's appeal to the Chancellor would be so deemed. Nothing in the resolution compels or justifies the view that such action would seriously affect public peace, health and safety or general welfare. The resolution is invalid under the Government Code sections cited, and so also is the Executive Order.

Respondents contend that the invalidity of the emergency regulation is not at issue because a conventionally adopted measure would have gone into effect before the selection of appellant's review panel. This, however, would totally abolish any judicial review of emergency regulations because of mootness and undermine Government Code section 11440.

At the same meeting at which Emergency Regulation 70-23 (quoted *supra*) was adopted, the trustees adopted the following (nonemergency) Resolution 70-24: "RESOLVED, By the Board of Trustees of the California State Colleges, that the Board revokes its policy on Grievance Procedures for Academic Personnel adopted June 27, 1968 (RFSA 68-11) and its modification of that policy adopted February 26, 1969 (RFSA 69-06), and procedures adopted to implement that policy, except that these procedures shall continue to be applicable to matters commenced but not finally concluded by the date of the intitial adoption of new grievance procedures for academic personnel, provided that decisions of the Chancellor's Review Panel in such matters shall be advisory to the Chancellor whose decision shall be final."

The public schools of this state are a matter of statewide rather than local or municipal concern. (*Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417, 421 [324 P.2d 328].) The trustees of California state colleges are a state agency created by the Legislature and its actions are subject to and must comply with the state Administrative Procedure Act (Gov. Code, §§ 11370-11440; cf. 10 Ops.Cal.Atty.Gen. 243, 246, holding State Board of Education [the then governing body of state colleges] subject to the Administrative Procedure Act). Appellant contends that this regulation is invalid because the notice and hearing requirements therein (Gov. Code, §§ 11371, 11420, 11423-11425) were not complied with. The record so shows. Respondents contend that these requirements do not apply because the regulation related only to the internal management of a state agency, thus falling within the exception

of Government Code section 11371, subdivision (b). For this proposition, respondents rely on several New York decisions which are not applicable herein because (a) the New York exception is broader (compare New York State Const., art. IV, § 8, with Gov. Code, § 11371, subd. (b)); (b) no New York decision involves a teacher's grievance procedure created under statutes similar to the California Education Code (*Drysdale* v. *University of New York at Stony Brook* (1969) 60 Misc.2d 180 [302 N.Y.S.2d 882, 885] [use and parking of motor vehicles]; *Schuyler* v. *State University of N. Y. at Albany* (1969) 31 App.Div.2d 273 [297 N.Y.S.2d 368, 371-372] [student behavior rules]; *Boling* v. *Rockefeller* (1967) 52 Misc.2d 745 [277 N.Y.S.2d 168, 171] [discharge from state militia]); and (c) because the better reasoned view is to regard the "internal management" narrowly so as to encompass accounting techniques and the like. (See *City of San Joaquin* v. *State Bd. of Equalization* (1970) 9 Cal.App.3d 365, 375 [88 Cal.Rptr. 12].) Tenure within any school system is a matter of serious consequence involving an important public interest. The consequences are not solely confined to school administration or affect only the academic community.

The minutes of the September 23d meeting reflect a very close vote on the proposal to eliminate the "advisory only" clause found in both resolutions—seven to eight in the emergency and six to eight in the nonemergency resolution. With opinion as closely divided upon the desirability of the proposed change in a matter of importance to the entire academic community and of special importance to the five members thereof involved in cases then pending, it is not unlikely that, if those whose rights were to be affected had had notice of the proposed action, they could have presented considerations that might have changed the opinion of one or two of the trustees who voted against eliminating the particular clause. We are compelled to sustain appellant's contention that the nonemergency resolution purporting to revoke the grievance procedures established by Executive Order No. 56 is invalid because of failure to give the required notice.

■ It follows that the procedures promulgated by Executive Order No. 56 were not revoked and the Chancellor did not have the discretionary power to reject the recommendation of his review panel. Appellant was accordingly entitled to tenure as of the beginning of the academic year 1970-1971.

### III. *Is the action moot?*

■ *No.* Appellant was granted tenure effective March 1, 1972. However, he was entitled to tenure and the salary and service benefits accruing thereto from the beginning of the 1970-1971 academic year. The com-

plaint seeks recovery therefor. Code of Civil Procedure section 1095 authorizes recovery of proven damages in mandamus proceedings. In addition to salary and service benefits that would have accrued to appellant, the briefs herein make it clear that he also seeks special damages under the federal Civil Rights Act (42 U.S.C. § 1983). Although due process and equal protection considerations were discussed in the briefs lodged with the trial court as well as herein, the questions were posed only insofar as they would affect the validity of the two resolutions involved herein and actions taken thereunder. We have not had to reach these constitutional issues and express no opinion as to the merits either of his claim under said act or the sufficiency of the pleading with regard thereto. They are matters that will have to be determined by further proceedings in the trial court. But the grant of tenure some 20 months after it should have been granted does not cure loss of additional salary, consideration for promotion, and service benefits that depend upon length of tenure and will be operative throughout appellant's academic career. Appellant's claim for damages in that regard is not moot and unless the parties can agree upon the mathematical computation of the dollar amounts involved the issues will have to be settled by the trial court.

The judgment is reversed with directions that the trial court enter its order overruling the demurrer and take such further proceedings as may be necessary to dispose of the case in accordance with the views herein expressed.

Devine, P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied May 23, 1973, and respondents' petition for a hearing by the Supreme Court was denied June 28, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.