**Rendell Noel MABEY, Jr., Plaintiff,**

**v.**

**Ronald REAGAN et al., Defendants.**

**No. 71 88 WTS.**

United States District Court,
N. D. California.

April 9, 1974.

Himelstein & Savinar, Mark E. Himelstein, San Francisco, Cal., for plaintiff.

Evelle J. Younger, Atty. Gen., David Bowie, Deputy Atty. Gen., San Francisco, Cal., for defendant, Trustees of Cal. State University and Colleges.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

Plaintiff Mabey and five other former untenured faculty members at the California State University at Fresno [1] bring this action under the Civil Rights Act, 42 U.S.C. Sec. 1983, against the Trustees of the California State Colleges, the Chancellor of the State College system, and the President of the College, seeking declaratory and injunctive relief.

The complaint alleges that the teaching contracts of Mabey and five other untenured faculty members were not renewed as a direct result of their exercise

of their constitutionally-guaranteed right of free speech and right of freedom of assembly. Plaintiffs further allege that the grievance procedure by which they sought administrative review of their non-retention violated constitutional standards of due process.

By its Memorandum of Decision filed on March 29, 1971, this court denied plaintiffs' motion for a preliminary injunction on the ground that plaintiffs did not have a sufficient "expectancy of reappointment" to require defendants to grant them a hearing prior to their non-retention. This court expressly reserved jurisdiction to consider the remaining substantive issues pending plaintiffs' exhaustion of state administrative remedies. Toney et al. v. Reagan et al., 326 F.Supp. 1093 (N.D.Cal. 1971), aff'd 467 F.2d 953 (9th Cir. 1972), cert. denied 409 U.S. 1130, 93 S. Ct. 951, 35 L.Ed.2d 263 (1972).[2]

This action is presently before the court on plaintiff's motion for summary judgment and/or a permanent injunction ordering reinstatement of plaintiff to the faculty at the State University at Fresno, and on defendants' motion to dismiss.

## I. FACTS

Plaintiff Mabey was first employed as a probationary academic employee at Fresno State College for the academic year 1968–69 and was subsequently retained as a member of the faculty of the philosophy department on a year to year basis.

During a meeting of the academic senate on May 18, 1970, plaintiff Mabey interrupted the proceedings to attempt to add to the agenda a discussion of an

---

1. Subsequent to this court's decision of March 29, 1971, two of the original six plaintiffs successfully pursued their grievances and were reinstated; another plaintiff was reinstated and granted tenure; another plaintiff was reappointed; and one plaintiff has resumed teaching out of State. Of the original six plaintiffs Mabey is the only remaining plaintiff who, having unsuccessfully exhausted his administrative remedies, still presents the issue.

2. In a subsequent case, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the United States Supreme Court held that a probationary, untenured college teacher is not entitled to a hearing prior to the non-renewal of his teaching contract; thereby effectively ratifying this court's holding in Toney et al. v. Reagan et al., *supra*.

article which appeared in the *Los Angeles Times* which quoted the acting president of the college as calling the younger members of the faculty "punks." Plaintiff was ruled out of order and entered into a dialogue with the apparent chairman of the meeting. There is no allegation that plaintiff used vile or obscene language, that plaintiff provoked or incited violence, or that plaintiff behaved disorderly, impolitely or irresponsibly in the presence of students or the general public.

During the fall of 1970 the chairman of the philosophy department recommended that the plaintiff's contract be renewed for the academic year 1971–72, but on November 5, 1970, the plaintiff applied for a leave of absence *without* pay to complete his doctoral thesis. Plaintiff's application was supported by the chairman and members of the philosophy department and by the personnel committee of the School of Humanities. The Dean of the School of Humanities, however, recommended that plaintiff's contract not be renewed and that the leave of absence without pay not be granted. On November 25, 1970, plaintiff was notified that his contract would not be renewed; this letter did not explain the reason or reasons for plaintiff's non-retention. Plaintiff subsequently requested the college president and the dean to set forth the reason for his non-retention, but it appears that plaintiff received no written explanation in response to his requests.

Plaintiff engaged in a grievance proceeding from May 17 through June 7, 1971, pursuant to Executive Order 112 [3] promulgated by the Chancellor but plaintiff's grievance was denied by the grievance panel as was his appeal to the Chancellor's office.

## II. MOTION TO DISMISS

Defendants' motion to dismiss rests in substance and effect on three independent contentions: (1) that plaintiff's claim is essentially a claim for state administrative mandamus; that abstention is proper, and that therefore, this court has no jurisdiction; (2) that plaintiff is barred by laches; and (3) that plaintiff fails to state a claim upon which relief can be granted.

Defendants base their motion on the affidavit of C. Mansel Keene, Vice-Chancellor of the California State University and Colleges, the pleadings, papers and memoranda on file, and Rule 12(b) of the Federal Rules of Civil Procedure.

### A. *Abstention*

██ Plaintiff claims he was non-retained by the State University at Fresno in violation of his civil rights guaranteed by the First, Fifth and Fourteenth Amendments. While plaintiff's complaint incorporates issues of state law, particularly the appropriate scope of the California Administrative Code, Title Five, Article 7, defendants fail to show that these issues of state law predomi-

---

**3.** Executive Order 112 was adopted by the Chancellor pursuant to the authority of the Trustees of the California State University and Colleges under the California Education Code Sections 22600, 22604, 23604, 24201, and the California Administrative Procedure Act which allow the Trustees to amend the California Administrative Code upon a finding by the Trustees that an emergency requires this expeditious process of statutory amendment. Executive Order 112 was found to be invalid by the California District Court of Appeals because the Trustees never made a genuine finding that there was, in fact, an emergency which justified this summary form of amendment. Poschman v. Dumke,

31 Cal.App.3d 932, 107 Cal.Rptr. 596 (1973).

Plaintiff contends that the holding in *Poschman* which invalidates Executive Order 112 effectively nullifies plaintiff's grievance proceeding held from May 17, 1971 to June 7, 1971, and entitles plaintiff to reinstatement until a new grievance hearing is held.

Defendants contend that the facts in *Poschman* are critically distinguishable and the invalidity of Executive Order 112 at best would entitle plaintiff to a trial de novo in this court and not reinstatement. Our discussion, *infra*, of the substantive First Amendment and Due Process issues precludes the need to determine the effect of *Poschman* on the case at bar.

nate or that special circumstances exist which would require deferring to local resolution of these issues. Abstention by this court is unwarranted and this court's jurisdiction is affirmed under the Civil Rights Act, 42 U.S.C. Sec. 1983. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Propper v. Clark, 337 U.S. 472, 490, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949).

#### B. *Laches*

Defendants contend that plaintiff's delay of nearly two years from the exhaustion of his administrative remedies until his motion for summary judgment and/or a permanent injunction constitutes laches, and therefore, plaintiff's claim should be barred by Rule 12(b) of the Federal Rules of Civil Procedure.

■■ Laches is an equitable defense which is appropriate when there has been an inexcusable delay in bringing an action to trial and that delay has prejudiced the fact-finding process. D. O. Haynes & Co. v. Druggists' Circular, 32 F.2d 215 (2d Cir. 1929); 30A C.J.S. Equity §§ 112–113 (1965). We cannot find that plaintiff's delay of two years was inexcusable or that this delay has prejudiced the fact-finding process.

Accordingly, we deny defendants' motion to dismiss to the extent it is based on the defense of laches.

#### C. *Failure to State a Claim Upon Which Relief Can Be Granted.*

■ Defendants' third basis for their motion to dismiss is their contention that plaintiff has failed to state a claim upon which relief can be granted. Defendants' contention appears in effect to refute each and every contention by plaintiff in plaintiff's motion for summary relief, and defendants' contention appears to rely on the affidavit of C. Mansel Keene, Vice-Chancellor of the California State University and Colleges. A motion to dismiss for failure to state a claim upon which relief can be granted which relies on the establishment of facts beyond the pleadings is to be treat-ed as a motion for summary judgment. Federal Rules of Civil Procedure 12(b). Accordingly, we will treat defendants' motion to dismiss as a cross-motion for summary judgment on the contentions raised in plaintiff's motion for summary judgment and/or a permanent injunction, and we will consider these motions concurrently.

### III. MOTION FOR SUMMARY JUDGMENT AND/OR PERMANENT INJUNCTION

In plaintiff's motion for summary judgment he contends in substance and effect that his conduct at the faculty senate meeting on May 18, 1970 was constitutionally protected, that he was non-retained as a result of his constitutionally-protected expression; that defendants were required to comply with the procedures outlined in California Administrative Code, Title Five, Article 7, if plaintiff was non-retained because of over-staffing; that defendants' failure to comply with these statutes constituted a per se violation of plaintiff's right to due process; and that plaintiff is entitled to reinstatement with back pay. Plaintiff bases his motion on plaintiff's affidavit, the uncertified document which is allegedly a transcript of the grievance proceeding held pursuant to Executive Order 112, the memoranda, pleadings and papers on file, and the Federal Rules of Civil Procedure.

■ Summary judgment is appropriate only if it appears from the pleadings, affidavits, depositions, and answers to interrogatories on file that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Federal Rules of Civil Procedure 56(c).

The cross-motions for summary judgment raise the following issues of law and fact: Was plaintiff's conduct at the faculty meeting constitutionally protected expression? If his conduct was constitutionally protected, was this conduct the determinative basis for defendants'

decision not to rehire plaintiff? Was the California Administrative Code, Title Five, Article 7 applicable to plaintiff's non-retention and if so, did defendants comply with this statute?, and Can this court award back pay to the plaintiff if it determines defendants' non-retention of plaintiff violated his constitutional rights?

A. *Was plaintiff's conduct at the faculty meeting on May 18, 1970, as a matter of law, within plaintiff's constitutionally-protected freedom of speech and assembly?*

Without determining whether or not plaintiff's conduct at the faculty meeting on May 18, 1970 was a determinative reason for the defendants' decision not to retain plaintiff as a probationary teacher, we must determine at the threshold whether plaintiff's behavior at this meeting was within the scope of expression constitutionally protected from government sanction.

It is established that a state-supported college cannot deny employment to a probationary teacher in retaliation for the teacher's exercise of his constitutionally-protected freedom of expression. Perry v. Sindermann, *supra* at 597.

"First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights of freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). The court in *Tinker*, however, recognized that the scope of these First Amendment rights must be analyzed in relation to the countervailing interest of upholding the authority of school officials and the orderly administration of the educational institution. 393 U.S. 503, 507, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Moore v. Winfield City Board of Education, 452 F.2d 726, 728 (5th Cir. 1971).

The specific issue at this point is whether plaintiff's conduct at the faculty meeting was within the constitutionally-protected realm of freedom of expression or whether plaintiff's conduct was so disruptive of the orderly administration of the educational functions of the State University at Fresno as to place plaintiff's conduct beyond traditionally-protected expression.

The balance between the individual teacher's First Amendment rights and the interests of the school administration in maintaining an intellectually open, honest and coherent educational environment is a delicate equilibrium. In cases where the teacher has involved or provoked student action in support of his own dissident views the courts have found that the teacher's conduct was beyond the limits of his protected rights. Skehan v. Board of Trustees of Bloomsburg State College, 358 F.Supp. 430 (M.D.Pa.1973) (teacher's refusal to follow administration's directive regarding the schedule of classes is not protected); Duke v. North Texas State University, 469 F.2d 829 (5th Cir. 1973) (teacher's use of profane language in speech to students criticizing the school administration, and teacher's preparation and distribution of leaflets announcing a protest meeting which violated school regulations were not protected); See also, Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970).

On the other hand, in a case where a teacher wrote a letter to a local newspaper criticizing the school administration and the local board of education the United States Supreme Court found that the teacher's conduct was protected from government retaliation. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

It is significant that in *Pickering* the teacher's expression relating to a local topical issue, did not involve or provoke student participation, was not violent, and did not disrupt the teacher's relationship with his immediate supervisor which required close daily cooperation

and confidence. 391 U.S. 563, 569–570, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967).

■ In the case at bar the meeting on May 18, 1970, was composed entirely of faculty members and school administrators; no students apparently were involved or present. The meeting occurred during the spring of 1970, a time of political and social unrest at universities across the country and a time when the faculty at the State University at Fresno, in particular, appears to have been engaged in a controversy over the remarks of the acting president of the college as they were quoted in a *Los An-* plaintiff interrupted the faculty meeting's planned agenda to raise the topical issue of the derogatory reference to the younger faculty members attributed to the acting president in this newspaper article. Plaintiff was ruled out of order and briefly continued to engage the meeting chairman in a caustic dialogue. At no time during this interruption did plaintiff use profane or obscene language and apparently at no time did plaintiff incite violence.

The facts here appear close to the situation in *Pickering* and substantially dissimilar to the student disruptions in *Skehan* and *Duke*. We find, as a matter of law, that plaintiff's conduct at the faculty meeting on May 18, 1970, was not disruptive of the school's quotidian functions and was within plaintiff's constitutionally-protected First Amendment rights as a teacher.

B. *If plaintiff's conduct at the faculty meeting on May 18, 1970, was constitutionally protected, was this conduct, as a matter of fact, the determinative basis for defendants' decision not to rehire plaintiff?*

■ While the existing school grievance panel and review authorities have special expertise in evaluating the merits of retaining a probationary teacher and while the findings of these school agencies are entitled to great weight, it is the obligation of this court to make an independent inquiry to determine whether the non-renewal of a teacher's contract was in retaliation for his exercise of his First Amendment rights. Board of Regents v. Roth, 408 U.S. 564, 586–587, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Ferguson v. Thomas, 430 F.2d 852, 859 (5th Cir. 1970).

■ In weighing the conclusions of the administrative agency and in determining whether plaintiff's constitutional rights have been violated, it is the mandate of this court to examine the reason given by the defendants for plaintiff's non-retention to insure that this reason is an adequate, independent ground for plaintiff's non-retention and not a mask for constitutionally-impermissible grounds. Duke v. North Texas State University, *supra* at 837; Board of Regents v. Roth, 408 U.S. 564, 582, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (Justice Douglas dissenting).

Defendants allege that plaintiff's teaching contract for the 1971–72 academic year was not renewed primarily because the philosophy department was overstaffed and the staff had to be reduced, and additionally because plaintiff's conduct at the faculty meeting on May 18, 1970, constituted unprofessional behavior sufficient to justify non-retention.

We have already concluded that plaintiff's conduct at that meeting was constitutionally protected, and therefore, this conduct neither alone nor as incremental evidence could supply justification for plaintiff's non-retention. Perry v. Sindermann, *supra*.

At no point did the defendants impugn plaintiff's abilities as a teacher or as a scholar; therefore, the legitimacy of defendants' non-retention of plaintiff is reduced to the validity of defendants' allegations that there was a problem of overstaffing in the philosophy department; that there was a need to reduce the staff in the philosophy department, and that this overstaffing problem was an independent and adequate basis for plaintiff's non-retention.

In analyzing the independent adequacy of defendants' overstaffing justification a number of factual issues arise.[4]

Plaintiff attempts to resolve these issues by relying on a 498-page alleged transcript of plaintiff's grievance hearing held pursuant to Executive Order 112 at Fresno on May 17 through June 7, 1971. This document is allegedly a transcript of a tape recording of the grievance proceeding which was not held under oath. The identity of the transcriber of the tape recording is not disclosed and there is no certification by either the recorder operator or by the transcriber that the document represents a true and accurate copy of the testimony at the hearing.

■ Summary judgment can be rendered only by reliance on admissions, depositions, answers to interrogatories and affidavits. Federal Rules of Civil Procedure 56(c). Supporting affidavits must be made on the personal knowledge and within the competency of the affiant. Federal Rules of Civil Procedure 56(c). An uncertified copy of testimony before an administrative agency is not admissible evidence in a summary judgment proceeding. Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 161 (7th Cir. 1963).

■ The material factual issue as to defendants' true reason for not retaining plaintiff remains in dispute and is not resolved by the affidavits and pleadings on file, and accordingly, to this extent, plaintiff's motion for summary judgment and/or a permanent injunction and defendants' motion for summary judgment (denominated as a motion to dismiss) are each denied.

C. *Was the California Administrative Code, Title Five, Article 7, legally applicable to defendants' decision not to renew plaintiff's contract, and if this statute was applicable, did defendants comply with this statute as a matter of fact?*

■ It has been recently established that an untenured, probationary college teacher is not constitutionally entitled to a hearing prior to the college's decision not to rehire him. Board of Regents v. Roth, *supra.* However, if the government agency has established discharge regulations the agency must comply with those regulations as a matter of constitutional due process even if the agency could have discharged the employee summarily without a due process review. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681 (1954); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Yellin v. United States, 374 U. S. 109, 121, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963).

4. The following issues appear particularly relevant:

1) Was there overstaffing in the philosophy department?
a) If so, how was this overstaffing determined?
b) If so, when was this overstaffing discovered?
c) What specific actions were taken by the administration to alleviate this overstaffing?
d) If so, what are the legally required procedures for reducing the faculty in an overstaffed department?
e) If so, what specific actions were taken by the philosophy department to alleviate this overstaffing?
f) What were the procedures used previously by the administration at the State University at Fresno to alleviate overstaffing?
g) If so, why did not the administration follow the faculty recommendation to reallocate the philosophy department's faculty to departments with faculty vacancies?
2) What attempts were made to find an available position for the plaintiff at another state college or university?
3) If plaintiff had been granted a leave of absence without pay for the 1971–72 academic year as he had requested would plaintiff have been counted in the overstaffing determination?
a) If not, why was plaintiff's request for a leave of absence without pay denied?
4) What evidence is there to indicate that the overstaffing justification was merely a cloak for defendants' other possible motives in not retaining the plaintiff?

■ At the threshold we must determine whether Title Five, Article 7 of the California Administrative Code applies to the case at bar. The article is entitled "Separation of Employees from Service for Lack of Funds or Lack of Work." We note that the key word here is "separation," a broad term which reasonably includes the non-renewal of contracts as well as the interruption of contracts in mid-term.

■ We further note the policy behind this statute:

It shall be the policy of the California State University and Colleges to provide *stability of employment* by foreseeing and avoiding unnecessary *reductions in staff*. However, when this is not possible due to lack of funds or lack of work, the *staff shall be reduced* in accordance with this article. The classes of *teaching service area to be reduced* and the number of employees therein to be laid off, shall be recommended by the president of the campus to the Chancellor. The Chancellor shall make all final determinations both for each campus and for the Office of the Chancellor. Title Five, Article 7, Sec. 43200(a), California Administrative Code (emphasis supplied).

The language of this section, particularly the use of the term "reduce" reasonably appears to include the non-renewal of probationary teachers when their contracts expire as well as the interruption of mid-term contracts.

In a supporting affidavit the Vice-Chancellor for Faculty and Staff Affairs of the California State University and Colleges states that the policy of the state college system was to anticipate overstaffing by not retaining probationary teachers when their contracts lapsed. While the university administration may have interpreted Title Five, Article 7 of the California Administrative Code narrowly to apply only to mid-term interruptions, the broad language of the title and policy purpose of the statute and the strong language emphasizing employment security for the teaching staff support our conclusion that Title Five, Article 7 of the California Administrative Code is applicable when a probationary teacher is non-retained solely because of overstaffing in his department.

Plaintiff alleges and defendants fail to contest that defendants failed to comply with Title Five, Article 7 of the California Administrative Code in four significant respects.

First, Title Five, Article 7, Sec. 43200(a) requires that the president of the college consult with the Chancellor and that the Chancellor then is required to determine which employees will be severed; there is no evidence that the defendants complied with this requirement.

Secondly, Title Five, Article 7, Sec. 43200(b) requires that the Chancellor survey other state colleges in order to place employees displaced by overstaffing; there is no evidence that defendants complied with this requirement.

Thirdly, Title Five, Article 7, Sec. 43202(a) details an established order for severing employees in an overstaffed department; there is no evidence that defendants complied with this lay-off requirement.

Fourthly, Title Five, Article 7, Sec. 43203 requires that the president or Chancellor notify each employee who is laid off for overstaffing and explain the reason for his discharge; there is no evidence that defendants complied with this requirement.

■ Defendants allege that plaintiff's contract was not renewed because of overstaffing in the philosophy department at the State University at Fresno. Under these circumstances defendants were obligated to comply with the administrative procedures established by Title Five, Article 7 of the California Administrative Code which provides for just such a separation due to a lack of work. Defendants' apparent failure to comply with the established procedures, if not controverted by the evidence, constitutes a violation of plaintiff's Fifth

Amendment right to due process; plaintiff's non-retention would have been invalidly determined and plaintiff, therefore, would be entitled to reinstatement.

D. *If this Court concludes that the plaintiff is entitled to reinstatement to the faculty at the State University at Fresno, can this Court, as a matter of law, compel the state to refund plaintiff's back-pay during the period in which plaintiff was improperly non-retained?*

 It is well established that a District Court, pursuant to jurisdiction under the Civil Rights Act, 42 U.S.C. Sec. 1983, has the equitable authority to grant plaintiff's request for back-pay as well as reinstatement if the court determines that the plaintiff was discharged from public employment in violation of his constitutional rights. Ramsey v. Hopkins, 447 F.2d 128 (5th Cir. 1971); Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581 (4th Cir. 1966); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770, 783–784 (8th Cir. 1966) (Blackmun, J.); Harkless v. Sweeny Independent School District, 427 F.2d 319, 323–324 (5th Cir. 1970), cert. denied 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439; Adamian v. University of Nevada, 359 F.Supp. 825, 831 (D.Nev.1973); see also Green v. Dumke, 480 F.2d 624, 628 fn. 7 (9th Cir. 1973).

For the aforementioned reasons it is ordered that:

(1) Plaintiff's motion for summary judgment should be, and hereby is, granted and defendants' motion to dismiss (herein treated as a cross-motion for summary judgment), correspondingly, should be, and hereby is, denied insofar as we find:

(a) Neither the principle of abstention nor the doctrine of laches bars plaintiff's action in this Court;

(b) Plaintiff's conduct and speech at the faculty meeting at the State University at Fresno on May 18, 1970, is protected expression within the scope of the First Amendment; and

(c) California Administrative Code Title Five, Article 7 is applicable to defendants' decision not to retain plaintiff due allegedly to overstaffing at the State University at Fresno.

(2) Plaintiff's motion for summary judgment should be, and hereby is, denied and defendants' motion to dismiss (herein treated as a cross-motion for summary judgment), similarly should be, and hereby is, denied insofar as we find issues of material fact, in particular, the true and actual reason or reasons for defendants' decision not to retain plaintiff on the faculty at the State University at Fresno and the defendants' compliance or failure to comply with California Administrative Code Title Five, Article 7 in not retaining the plaintiff, have not been resolved by the affidavits and pleadings on file.

(3) This Court has the authority to grant an award of back-pay as an equitable remedy upon a finding of a violation of plaintiff's civil rights under 42 U.S.C. Sec. 1983, but this Court reserves the right to grant such an award pending resolution of the outstanding issues of material fact.

(4) The Court reserves full power to determine the said issues but to expedite and assist in the determination thereof, this action should be, and hereby is, referred under Local Rule 505 and also under Fed.R.Civ.P. 53(b), to a Special Master to be appointed by this Court in a separate Order setting forth the conditions, limits, and terms of the reference for the purpose of hearing, assembling and summarizing the evidence pertaining to the extant issues of material fact set forth in Paragraph 2 of this Order.