Opinion
ASHBY, J.
This is a dispute between the president and the academic senate of Californiá State University, Long Beach (CSULB), over *455 interpretation of the campus-wide procedures at CSULB for appointment, advancement, and tenure of academic employees. Plaintiff Mun-see, as chairperson of the academic senate of CSULB,[1] brought this action for declaratory and injunctive relief against defendant Horn, president of CSULB, defendant Dumke, chancellor of the California State University and Colleges, and defendants trustees of the California State University and Colleges. The trial court denied injunctive relief and gave declaratory relief in favor of defendants. Plaintiff appeals.
The dispute concerns a document which was adopted by the faculty at CSULB and approved by President Horn in 1972, known as the “Reappointment and Advancement Policy” (hereinafter R & A Policy or campus-wide procedures). This document contains the campus-wide procedures for recommendations by the faculty on appointment, retention, tenure, or promotion of faculty. It was adopted to comply with a regulation of the trustees of the California State University and Colleges, section 42701 of title 5 of the California Administrative Code, which provides: “It is the policy of the Trustees that faculty be consulted on academic personnel matters. Each campus shall develop campus-wide procedures whereby only members of the faculty who are tenured, and such department chairmen and academic administrators as the campus procedures shall provide, may participate at any level of consideration in the deliberations or vote on recommendations relating to appointment, retention, tenure or promotion of faculty. The procedures shall provide that those making such recommendations should consider information from other faculty members and any other source, including, but not limited to students. [K] The campus-wide procedures shall be consonant with the regulations, policies and procedures of the Board of Trustees and the Chancellor and shall be approved by the president.”
The purpose of these procedures is to provide a method for the faculty to make known to the president its views on faculty appointments. (See generally Zumwalt v. Trustees of Cal. State Colleges, 33 Cal.App.3d 665 [109 Cal.Rptr. 344].) The recommendations are advisory only, since the ultimate power of appointment is vested in the president, “using the consultative procedures established pursuant to Section 42701 ... .” (Cal. Admin. Code, tit. 5, § 42702, subd. (d); Garnel v. Bunzel, 68 Cal.App.3d 999, 1007 [137 Cal.Rptr. 627].) Once the campus-wide procedures have been adopted by the faculty and approved by the *456 president, the president is required to follow them until they are changed, or unless they conflict with the regulations, policies and procedures of the board of trustees and the chancellor. (Cal. Admin. Code, tit. 5, § 42701; see Poschman v. Dumke, 31 Cal.App.3d 932, 938-943 [107 Cal.Rptr. 596].)
The basic issue which was presented to the trial court in this case for declaratory judgment was whether the president or the academic senate had the final say over interpretation of the campus-wide procedures. The academic senate made three formal “interpretations” of the R & A Policy, which interpretations the president refused to “implement.” (See appendix for a statement of the three disputed “interpretations.”) Plaintiff contends that interpretations of the R & A Policy by the academic senate are binding on the president. The trial court held in defendants’ favor “that interpretations of reappointment and advancement policy made pursuant to section 7.52 of the Reappointment and Advancement Policy of California State University, Long Beach, are not final and binding unless and until approved by the University President . .. .” The trial court was correct.
Plaintiff’s contention that interpretations by the academic senate are binding on the president is based on section 7.52 of the R & A Policy which provides: “All questions of interpretation of this document shall be referred to the Associate Vice President for Academic Affairs - Academic Personnel for decision. Decisions of the Associate Vice President for Academic Affairs - Academic Personnel may be appealed to the Academic Senate.”
Nothing in section 7.52 expressly states that the interpretation by the academic senate is binding upon the president.[2] Plaintiff contends that this is implied by section 7.52. We disagree. Such a construction of that section is not reasonable in light of the fact that the campus-wide procedures are advisory only. (Garnel v. Bunzel, supra, 68 Cal.App.3d 999, 1007.) It is one thing to say that, once the campus-wide procedures have been approved and adopted, the president is required to follow them (see Poschman v. Dumke, supra, 31 Cal.App.3d 932, 938-943); but it *457 is quite another thing to say that the president is required to follow the academic senate’s interpretation of those procedures.[3]
Plaintiff’s witness, Professor Korber, testified that the previous president had not challenged the interpretive power of the academic senate. The practice of the previous administration is not determinative, since the R & A Policy was revised after the adoption of the state regulations in July 1971.
The judgment is affirmed.
Stephens, Acting P. J., and Hastings, J., concurred.
APPENDIX
The three “interpretations” the president has refused to “implement” are: (a) Section 7.11 of the R & A Policy provides:
“7.11 Faculty status and related matters are primarily a faculty responsibility; this area includes appointments, reappointments, decisions not to reappoint, promotions, the granting of tenure, and dismissal. The primary responsibility of the faculty for such matters is based upon the fact that its judgment is central to general educational policy. Furthermore, scholars in a particular field or activity have the chief competence for judging the work of their colleagues; in such competence it is implicit that responsibility exists for both adverse and favorable judgments. Likewise there is the more general competence of experienced faculty personnel committees having a broader charge. Determinations in these matters should first be by faculty action through established procedures, reviewed by the chief academic officers with the concurrence of the board. The governing board and president should, on questions of faculty status, as in other matters where the faculty has primary responsibility, concur with the faculty judgment except in rare instances and for compelling reasons which should be stated in detail.”
On February 15, 1974, the academic senate interpreted that section 7.11 means “that a faculty member who is eligible for promotion, advancement, reappointment, or tenure shall be recommended as qualified for whichever is applicable by his department unless *458 his departmental peers establish compelling reasons, stated in written detail, that he is deficient in fulfilling his work requirements defined in his department R & A Policy. The compelling reasons must take into account all conditions of work which affect, influence or militate against his work performance, such as his teaching load, the number of students under his direction, and the opportunity or time available for self-renewal or creative activity that he has had. The conditions of work must be sufficient in order that the expectations of his work requirements defined in his department R & A Policy may be sustained. No review of the eligible faculty member’s work performance by others outside the peer group shall be made. All subsequent actions by others on the basic recommendation by the peer group shall be limited to making certain that established procedures are followed. Any eligible faculty member who is recommended as qualified shall be promoted, advanced, reappointed or given tenure by the president.”
(b) Appendix B, part I, 2d, of the R & A Policy provides: “The procedures should state that the basic evaluation of a faculty member’s teaching ability and professional competence will be made by his colleagues in his field and his immediate supervisor, the department chairman."
On September 27, 1974, the academic senate interpreted that appendix B, part I, 2d, “can mean only that one basic evaluation of a faculty member’s teaching ability and professional competence shall be made by a single academic area committee consisting of the faculty member’s colleagues in his field and his department chairman.” (Italics in original.)
(c) Appendix B, part I, 2h, of the R & A Policy provides: “The procedures should state that promotion in rank is in no way automatic but is granted only in recognition of competence, professional performance and meritorious service during the period in rank.”
On March 14, 1975. the academic senate interpreted that appendix B, part I, 2h. “means only the following: Every candidate for promotion shall be judged exclusively and solely on the criteria (1) competence, (2) professional performance, and (3) meritorious service during period in rank, and if the candidate is found satisfactory in (1), (2), and (3), then the candidate shall be promoted. No criteria other than (1), (2), and (3), e.g., financial limitations or considerations, shall be considered or used by any department, department R and A committee, department chairperson, school, school R & A committee, school dean, by the president or his/her designees, or by anyone else involved in the evaluation of a candidate for promotion, nor shall financial limitations or considerations be used in some manner by any of the aforementioned to deny or prevent the promotion of any candidate for promotion who is satisfactory in (1). (2), and (3).”

The academic senate of CSULB is a body composed of elected members of the faculty whose function is to provide the president with the views of the faculty.

PlaintifTs witness testified that the function of section 7.52 “is to provide a channel of interpretation of rules of this document on retention and promotion first through the associate vice president for academic affairs, relating to academic personnel and second if there is disagreement with the interpretation provided by the vice president for academic affairs, then this may be appealed to the Academic Senate.”

The trial court also suggested that since section 7.53'of the R & A Policy authorizes its “amendment” by the academic senate, “when approved by the President,” any interpretation which had the effect of amending the document clearly would require the president’s approval.
Plaintiff appears to argue that the case should be remanded for trial on the issues of whether the three specific interpretations in question constituted “amendments” rather than “interpretations” or specifically conflicted with any state-wide regulations, policies or procedures of the trustees. This contention is without merit. The issue is whether plaintiff has shown any reasonable basis for construing section 7.52 to mean that interpretations of the R & A Policy by the academic senate are binding on the president. Plaintiff has failed to do so.