511 P.2d 209

Marlow RIGGINS, Ruby Bowen, on their own behalf, and on behalf of all others similarly situated, Appellants,

v.

John O. GRAHAM, Commissioner, Arizona State Department of Public Welfare, and Glenn A. Jones, James J. Coughlin, Laura Almquist, Harold Musgrave and Arthur Van Haren, Members of the Arizona State Board of Public Welfare; individually and in their official capacities, Appellees.

No. I CA–CIV 1903.

Court of Appeals of Arizona,
Division 1,
Department A.

July 3, 1973.

Rehearing Denied Aug. 21, 1973.

Review Denied Oct. 9, 1973.

Victor Aronow, Maricopa County Legal Aid Society, Tempe, for appellants.

Gary K. Nelson, Atty. Gen. by James B. Feeley, Michael S. Flam, Asst. Attys. Gen., Phoenix, for appellees.

OGG, Judge.

This is an appeal from a special action instituted in Maricopa County on behalf of some 3,300 General Assistance Recipients [Recipients] who challenge the reduction of their assistance grants by the Arizona State Board of Public Welfare [Board]. The trial court upheld the decision of the Board by dismissing Recipients' complaint. Recipients instituted this appeal alleging the Board failed to comply with the applicable Welfare Department statutes and, further, that the Board's action violated the due process clauses of the Arizona and United States Constitutions.

The basic facts which are not disputed are set out as follows: The Arizona State Department of Public Welfare is authorized, pursuant to A.R.S. § 46–207, to set a standard of need for each welfare recipient assistance program as well as the percentage of that standard of need to be paid.

This determination is made upon the basis of the available legislative appropriation for each program, the number of recipients involved in each program, historical program data and the Welfare Department's projections of future trends. Based upon the legislative appropriation and a revised analysis of increased caseload trends, on June 18, 1971 the Board notified each recipient that his grant would be reduced from 75% of need to 70% of need, beginning with July 1, 1971, for the reason that the legislative appropriation for this gen-

eral assistance program would support a level of need no higher than 70%. The Board declared this order reducing the percentage of need to be an emergency under the provisions of A.R.S. § 41–1003 which dispensed with the requirements of A.R.S. § 41–1002 requiring at least 20 days' notice and an opportunity for a hearing.

Three questions are presented to us for review:

1. Were Recipients entitled to discovery of requested items under Rule 4(e), Rules of Procedure for Special Actions?

2. Was there an "emergency" within the meaning of A.R.S. § 41–1003 sufficient to abrogate the public notice and hearing requirements of the Administrative Procedure Act, A.R.S. § 41–1002?

3. Were notice and a hearing a necessary prerequisite to affording due process in the grant reduction pursuant to A.R.S. § 46–204?

### DISCOVERY

Recipients submitted interrogatories and requests for admissions to the Board for pretrial discovery purposes. The Board refused to answer. The trial court, after a hearing, ruled that some of the information had already been furnished to the Recipients and that the remainder of the information sought was not relevant or of sufficient evidentiary value to warrant an order compelling discovery. The applicable rule on discovery in special actions is 17 A.R.S., Rule 4(e), Rules of Procedure for Special Action:

"(e) Trial. If a triable issue of fact is raised in an action under this Rule, it shall be tried subject to special orders concerning discovery. If the petition is filed in an appellate court, that court may, if it believes that the matter should be tried, either designate a master or transmit the matter to a Superior Court for trial, subject to reference back if the court desires. The court may use an advisory jury on matters of fact."

There is neither case law not comment which sheds much light as to the scope of discovery in special actions. The 1969 State Bar Committee note states as follows:

". . . Discovery in special action proceedings may be necessary in particular circumstances, though it will certainly not be routinely required, and will never be used in an appellate court since no trials will occur there. The Rule gives necessary latitude to allow discovery in those rare instances when it is necessary."

■ Rule 4(a) places the burden of determining this question where it belongs— on the trial court. That court in its discretion determines whether discovery is to be had and, if so, the type and degree.

The very nature of a special action is a unique remedy designed for an unusual set of circumstances where the speedy determination of the issue is of prime consideration. To allow a wide range of discovery, attendant with the delays involved, would tend to defeat the very purpose of a special action.

■ After a review of the record, we find no abuse of discretion in the orders of the trial court relative to the discovery issue. It should be noted that Recipients tried unsuccessfully to get the Arizona Supreme Court to accept jurisdiction of this discovery question in another special action presented earlier to that Court and were denied.

### WAS THERE AN "EMERGENCY" WITHIN THE MEANING OF A.R.S. § 41–1003?

■ A.R.S. § 41–1002 of the Administrative Procedure Act sets out certain due process requirements before an administrative body, such as the Board in this case, can adopt any rule. This statute reads as follows:

"§ 41–1002. Notice of proposed adoption of rule; contents of notice; hearing

A. At least twenty days prior to adoption of any rule, notice of the proposed

action shall be filed with the secretary of state. The notice shall include:

1. A statement of the time, place and nature of the proceedings for adoption of the rule.

2. Reference to the authority under which the rule is proposed to be adopted.

3. Either an informative summary of the proposed rule, or the express terms thereof.

4. Such other matters as are prescribed by statute applicable to the specific state agency or to any specific rule, or class of rules.

B. On the date and at the time designated in the notice, the agency shall afford any interested person, his duly authorized representative, or both, the opportunity to present statements, arguments or contentions in writing relating thereto, with or without opportunity to present them orally."

It is undisputed that the Board did not comply with the provisions of this statute; the Board justified its action by alleging that it was faced with an emergency situation and that under the provisions of A.R.S. § 41–1003 it had the authority to modify Recipients' grants without the notice provided by § 41–1002. This statute reads as follows:

"41–1003. Emergency adoption of rule

If in a particular instance the state agency makes a finding that adoption of a rule is necessary for immediate preservation of the public peace, health and safety and that notice and public procedure thereon are impracticable, unnecessary or contrary to public interest, the rule may be adopted as an emergency rule, without the notice provided by § 41–1002."

After reviewing the transcript we find it to be a close question of fact as to whether there was an emergency. The trend data and projections for the future could justify the decision of the Board that payments should be reduced to avert exhaustion of the funds prior to the end of the fiscal

year of 1971–72. With perfect hindsight Recipients point out the fact that the Board would not have had to make such a reduction because funds were indeed available through the fiscal year. Recipients herein are asking this Court to enter its judgment of whether an emergency in fact existed against the unanimous judgment of the State Board of Welfare. In refusing to set aside the judgment of the Board, we approve of the statement and reasoning of the United States Supreme Court in the case of Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1163, 25 L.Ed.2d 491 (1970), wherein the Court stated:

"The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, *ante*, 397 U.S. p. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

### DID PROVISIONS OF A.R.S. § 46–204, SUBSEC. B APPLY TO THIS CASE?

A.R.S. § 46–204, subsec. B reads as follows:

"B. The applicant shall be notified of the decision in writing. The assistance shall be paid at least once monthly to applicant. When an application is rejected wholly or in part, or when modification of assistance is made, written notice shall be given to the applicant. Such notice shall inform the applicant or recipient of the right to a hearing on the rejection or modification."

Recipients allege they were denied due process when the Board failed to comply with this statute. This statute and the appeal provisions of A.R.S. § 46–205 were designed to set up procedures to determine an individual's eligibility for welfare payments and the proper amounts of such payments. A distinction must be drawn between the Board's administrative

rule-making function and its adjudicative function. Here the Board's policy ruling of general application is being challenged —a plain exercise of the rule-making function.

If this were a factual dispute involving the reduction of an individual's grant, the provisions of A.R.S. § 46–204, subsec. B would apply for it would be within the Board's adjudicative function.

In the case of Provost v. Betit, 326 F. Supp. 920 (D.Vt.1971), the United States District Court recognized the distinction between agency adjudicative and rule-making functions and that different due process standards are applicable. The Court held that a state-wide policy change in the welfare program which increased the benefits of some recipients and decreased the benefits of others did not violate constitutional requirement of due process even though individuals whose benefits were reduced under the new plan were not given a hearing prior to the reduction in benefits.

The closest factual case to the case at issue is State of New Mexico ex rel. Ellis and Caruso v. Heim, et al., 83 N.M. 103, 488 P.2d 1207 (1971). In this case the New Mexico State Department of Health and Social Services reduced the grants for aid to dependent children. The court held that due process standards did not require that reduction of benefits be preceded by notice and an opportunity to be heard in view of the fact that reduction was state-wide, affecting a whole class of recipients and was not a factual determination to reduce an individual's benefits. See also Rochester v. Ingram, 337 F.Supp. 350 (D. Del.1972).

We believe the Board was exercising its rule-making power uniformly on a state-wide class of recipients, that there was no violation of due process and that the provisions of A.R.S. § 46–204, subsec. B were not applicable to this case. The decision of the trial court is affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.