577 P.2d 730

**Manuel VALDEZ, on behalf of himself and all others similarly situated, Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, legal successor to the Employment Security Commission of Arizona, a state agency, Appellee.**

No. 1 CA–CIV 3524.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 31, 1978.

Rehearing Denied April 4, 1978.

Review Denied April 25, 1978.

Coconino County Legal Aid by Douglas Meiklejohn, Flagstaff, Southern Arizona Legal Aid by Leslie Nixon, Tucson, for appellant.

Bruce E. Babbitt, Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

WREN, Judge.

This is an appeal from a class action for declaratory and injunctive relief which sought to have declared invalid the application and enforcement of the Benefit Policy Rules utilized by the defendant, Department of Economic Security (DES), for eligibility determinations in the awarding of unemployment benefits pursuant to A.R.S. § 23–601, et seq.

The appellant, Manuel Valdez, on behalf of himself and all others similarly situated challenged the validity of the rules on the following grounds.

1. They were not lawfully promulgated in accordance with the requirements of A.R.S. § 23–651 and A.R.S. § 41–1002 which requires public notice and the opportunity for public comment prior to their adoption; and

2. The defendant's finding and statement of emergency did not constitute compliance with the provisions of A.R.S. § 41–1003.

The trial court granted defendant's motion for summary judgment, declaring that the Benefit Policy Rules adopted under the emergency provisions of A.R.S. § 41–1003 were legally valid rules and denied the injunctive relief sought by the plaintiff.

It is the position of the appellant that the Arizona Administrative Procedure Act which became effective on July 1, 1952, A.R.S. § 41–1001, et seq., required State Administrative Agencies such as defendant here to provide notice of the adoption of any proposed rule. Thus, he asserts, the rules were required to be promulgated in accordance with the requirements of the Arizona Administrative Procedure Act of 1952 and that nothing was done by the Employment Security Commission (Commission), legal predecessor to the defendant, to comply with these requirements following passage of the Act.

The record brings to our attention that on August 10, 1970, counsel for the Commission advised its members that the rules were subject to the Arizona Administrative Procedure Act since its passage in 1952, and that formal promulgation was both overdue and appropriate. At a meeting held on August 21, 1970, the Commission declared that an emergency existed and officially promulgated the rules, naming them the Benefit Policy Rules, without any public notice or hearing.

This immediate action was precipitated when plaintiff, Manuel Valdez, applied for unemployment benefits on April 8, 1975 and his application was denied. He appealed and on May 30, 1975, an appeals tribunal of DES upheld the denial of benefits under the authority of the Benefit Policy Rules.

A.R.S. § 41–1002 outlines the procedure for rule adoption:

"A. At least twenty days prior to adoption of any rule, notice of the proposed action shall be filed with the secretary of state. The notice shall include:

1. A statement of the time, place and nature of the proceedings for adoption of the rule.

2. Reference to the authority under which the rule is proposed to be adopted.

3. Either an informative summary of the proposed rule, or the express terms thereof.

4. Such other matters as are prescribed by statute applicable to the specific state agency or to any specific rule, or class of rules.

B. On the date and at the time designated in the notice, the agency shall afford any interested person, his duly authorized representatives, or both, the opportunity to present statements, arguments or contentions in writing relating thereto, with or without opportunity to present them orally."

The provision that permitted emergency adoption of a rule without public notice and hearing is A.R.S. § 41–1003: [1]

"If in a particular instance the state agency makes a finding that adoption of a rule is necessary for immediate preservation of the public peace, health and safety and that notice and public procedure thereon are impracticable, unnecessary or contrary to public interest, the rule may be adopted as an emergency rule, without the notice provided by § 41–1002."

The appellant argues that the Commission's attempted use of this section was improper in that the section speaks of "a finding" in a "particular instance" concerning adoption of "a rule" and urges us to adopt the position that the obvious concern of the legislature when it enacted this provision was that an agency be able to deal with a specific emergency that had arisen by quickly adopting a specific rule to deal with the problem. The DES has improperly used that provision here, he urges, to justify the wholesale adoption, without public notice or hearing, of over six hundred rules that had been promulgated and accumulated over a period of more than thirty years.

The appellant cites to *Riggins v. Graham*, 20 Ariz.App. 196, 511 P.2d 209 (1973), wherein the Arizona Board of Public Welfare had adopted an emergency rule reducing the grants of all general assistance recipients from seventy-five per cent of need to seventy per cent of need to avoid exhaustion of available funds, pointing out that even there this Court found it to be a "close question of fact as to whether there was an emergency" even though the act was approved; stating that this Court was not empowered by the Constitution to second-guess state officials "charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

Appellant further asserts that the emergency adoption of a rule is restricted even more by A.R.S. § 41–1007(A) which declares that an emergency rule may be declared invalid ". . . upon the ground that the findings and statement of emergency do not constitute an emergency within the provisions of § 41–1003."

As the coup d'etat to his argument, appellant states that the Commission should have been on notice that its rules had to be adopted through the public notice and hearings procedures since 1936 when A.R.S. § 23–651 was enacted. That statute provided:

"A. General and special rules may be adopted, amended or rescinded by the commission only after public hearing or opportunity to be heard thereon, after notice thereof has been given.

B. General rules shall become effective ten days after filing them with the secretary of state and publication in one or more newspapers of general circulation in this state. Special rules shall become effective ten days after notification to or mailing to the last known address of the individuals or employing units affected thereby.

C. Regulations may be adopted, amended or rescinded by the commission and shall become effective in the manner and at the time prescribed by the commission."

It is urged that there was no emergency justifying the action taken, in that there was no threat to the public peace, health or safety and that if compliance was impractical it was because the Commission had been promulgating and accumulating the rules for 18 years without any regard for the law.

The Commission's memorandum of its action of August 21, 1970, read as follows:

"The Commission, after thorough study and discussion made a finding that adoption of the statements of policy as Rules is necessary for immediate preservation of the public peace, health, and

---

1. This provision was amended by Ch. 82, § 8, Laws of 1976, to require a notice and hearing within 90 days after the emergency adoption of a rule. The amendment does not apply to the disposition of this matter.

safety and that notice and public procedure thereon are impracticable and contrary to public interest: and, therefore, it was moved and unanimously passed that the current statements of policy contained in the Manual of Policy be adopted as Rules on an emergency basis pursuant to Section 41–1003, A.R.S., and without the notice provided by Section 41–1002, A.R.S."

The appellant's attack on this language is supported, he urges, by *Poschman v. Dumke*, 31 Cal.App.3d 932, 107 Cal.Rptr. 596 (1973), that:

"The finding of and statement of facts constituting an emergency must be more than mere 'statements of the motivation' for the enactment and provide an adequate basis for judicial review. *Poschman v. Dumke*, 31 Cal.App.3d at 941, 107 Cal.Rptr. 602.

The appellant concludes by pointing to his own situation that the Commission had determined unilaterally, without notice to or input from either the legislature or the public, that any employee who failed to follow a "reasonable and proper" instruction from an employer may be disqualified from benefits.

The State counters by pointing to the historical evolvement of the rules and regulations from the inception of the Unemployment Compensation Law enacted by the Arizona Legislature in 1936 when the Employment Security Commission was first created. The original act provided for the payment of unemployment benefits pursuant to such regulations as the Commission may adopt, amend or rescind; and the same statutory authority also provided for the adoption of general and special rules after public hearing or opportunity to be heard thereon and after proper notice had been given. Laws 1936, 1st Spec.Sess., Ch. 13 § 11(b). This section became A.R.S. § 23–651 with no significant changes in its language as to the procedure for adoption of regulations or rules. Laws 1941, Ch. 124, § 11; Laws 1947, Ch. 77, § 25. What is now

known as the Benefit Policy Rules began as interpretations of and additions to the provisions of the Employment Security Law and were used by the Commission on a daily basis to determine eligibility of applicants for unemployment benefits. It is undisputed that these rules were adopted and used without compliance with the provisions of the statute. They were accomplished by the Commission's passing of a formal resolution.

These guidelines and instructions for the payment of benefits were gradually collected into a large looseleaf book, copies of which were distributed to all officers of the Commission throughout the state, and to the employees for use as a training tool in making determinations as to eligibility under the Unemployment Security Act. This book ultimately became known as the "Benefit Policy Manual" and was intended by the Commission as a guideline for use by its employees. By the year 1970 the Benefit Policy Manual had grown to approximately 480 pages and was organized into seven major divisions: voluntary leaving; misconduct; able and available; refusal of work; miscellaneous; total and partial unemployment; and labor disputes. Its contents were derived from court decisions and opinions from the State Attorney General or the Solicitor General of the U. S. Department of Labor and contained approximately 633 policy statements or guidelines.

Of concern to the Commission, obviously, was that the mass adoption of currently active rules in accordance with A.R.S. § 41–1002 and § 23–651(B), requiring the preparation and filing of more than 600 rules, 20 days prior notice of the public hearing, and publication in a newspaper, would require a minimum of several additional weeks. The Commission argued in the trial court that it had only two alternatives to emergency adoption: (1) suspend the rules while the public notice and hearing procedure was completed; or, (2) to continue to use the apparently invalid rules while that procedure was undertaken.

The Commission strenuously urges that neither alternative was acceptable. It points to the 1974 calendar year of paid benefits of $47,819,817 and from January 1, 1975, through June 30, 1975, $80,682,694 and states that payment of the weekly unemployment benefits could not be made without equivalent weekly decisions and determinations, and that prompt and uniform decisions could only be made by using the Policy Manual.

The appellant counters by urging that the Commission could have adopted the rules temporarily by the emergency means, and then promulgated them by the statutory procedure of public notice and hearing in the interim. He condemns the fact that the Commission failed to recognize in 1952 that the Benefit Policy Manual should be adopted in compliance with the newly enacted Administrative Procedure Act.

However, we note that prior to 1952 the only procedure for Commission adoption of rules and regulations was contained in the Arizona Employment Security Act. The original act in 1936, Laws 1936, 1st Spec. Sess., Ch. 13, § 3 stated that: "All benefits shall be paid through employment offices, in accordance with such regulations as the Commission may prescribe," while § 11(b) of that act specifically dealt with *rules* and commanded that all general and special rules be adopted only through the public procedures. It was therefore concluded by the Commission that since all benefits had to be paid in accordance with "regulations" prescribed by the Commission, and since the guidelines in the Benefit Policy Manual concerned only the internal management of the agency, they were therefore outside the provisions of § 11(b) of Ch. 13, Laws 1936, 1st Spec.Sess.

■ In our opinion, it takes only a cursory review of the record to make it evident that the statewide employment insurance program could not operate without the Benefit Policy Rules. As stated by the Deputy Administrator, Mr. Henry Haas:

"It was obvious to the Commission and staff that the mass of individual interpretations of the law, made necessary by the sudden suspension of the rules, would result immediately in uncertainty, confusion and indecision, creating delay and an evergrowing log jam."

We find that the Commission acted within its discretion in making an emergency adoption of the policy rules in accordance with A.R.S. § 41–1003, and reject the position that the Commission should have followed the procedure for temporary adoption. There is no procedure in our law for *temporary* adoption. An emergency adoption is a *permanent* adoption, provided that it otherwise complies with the law. Furthermore, we agree with the observation expressed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) that the fiscal and administrative burdens would be out of proportion to any countervailing benefits.

As to the appellant's contention that the Commission did not follow the requirements of A.R.S. § 41–1007 in that it did not make "findings and statements" as prerequisites to the use of the emergency procedures of A.R.S. § 41–1003, we have determined that the Commission's statement in its minutes adequately complies with the statute justifying the use of the emergency procedures.

Judgment affirmed.

EUBANK, P. J., and JACOBSON, J., concur.