607 P.2d 965

**Wesley B. BILAGODY, Jr., Appellant,**

**v.**

**Philip THORNEYCROFT, Assistant Director of the Arizona Department of Transportation for the Motor Vehicle Division, Appellee.**

**No. 1 CA–CIV 4161.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 13, 1979.

Rehearing Denied Oct. 18, 1979.

Review Denied Nov. 6, 1979.

OPINION

HAIRE, Presiding Judge.

On July 30, 1977, while driving an automobile that belonged to one of his passengers, appellant was involved in a two-car accident on a highway north of Flagstaff. The accident resulted in slight damage to both vehicles, and no injuries.

Thereafter appellant received a "Notice of Intent to Suspend" dated September 13, 1977, informing him that the Department of Transportation would suspend his license on September 26, 1977 unless he showed compliance with the financial responsibility law [1] prior to that date. The notice listed several options for compliance with the financial responsibility law, including a deposit of security or proof of insurance (see generally A.R.S. § 28–1142), and concluded with the following provision:

> "NOTICE OF RIGHT TO HEARING PRIOR TO EFFECTIVE DATE OF SUSPENSION
>
> "If you cannot meet the requirements of paragraphs 1, 2 or 3 above [methods of compliance with, or exceptions from compliance with, the financial responsibility law], you may request a hearing before the effective date of suspension stated above. At the hearing you may dispute the amount of security deposit requested *or offer proof that there is no reasonable possibility a judgment may be rendered against you* as a result of the accident referenced above." (Emphasis added).

Appellant timely requested a hearing, and the department thereupon scheduled a hearing in Phoenix for October 25, 1977. Prior to the hearing appellant, claiming that he was indigent and that this would prevent his participation in the Phoenix hearing, made a series of attempts before the department's hearing section to have the hearing moved to Flagstaff, to be permitted to proceed without prepayment of fees, and to obtain the department's assistance in serving appellant's witnesses.

---

DNA People's Legal Services, Inc. by Daniel L. Jackson and Suzanne Covington, Tuba City, for appellant.

Robert K. Corbin, Atty. Gen., John A. LaSota, Jr., Former Atty. Gen. by Paul S. Harter and John L. Jones, Asst. Attys. Gen., Phoenix, for appellee.

1. The "financial responsibility law" is an informal reference to the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 to 28–1225.

The department in effect denied appellant's motions, stating that it would instead conduct a hearing in appellant's absence relying upon police reports and written witness statements. Appellant then initiated this action by filing a "Complaint: Special Action" in the Superior Court for Coconino County. The complaint set forth three claims for relief, each of which was directed against alleged violations of due process and equal protection stemming from the contemplated hearing procedures of the department. The relief sought included a temporary injunction staying the department's license suspension proceedings and, after a hearing on the merits, a permanent injunction staying the license suspension "until and unless the defendant holds a hearing in Coconino County to enable plaintiff an opportunity to show that there is no reasonable possibility that a judgment will be rendered against him as a result of the collision." To support his claim that special action relief was appropriate, appellant alleged that he had no adequate remedy by appeal because the provisions of A.R.S. §§ 28–1122 and 41–1010A(1) would preclude him from raising objections to venue and the denial of procedural rights.[2]

When the complaint was filed the judge of the superior court issued an *ex parte* stay of the department's hearing, which had been scheduled for the following morning. Thereafter, following a November 1, 1977 court hearing at which counsel for appellant and the department presented oral argument, the superior court denied appellant's request for a temporary injunction and dismissed the complaint. Appellant has timely perfected an appeal to this Court for review of the trial court's action.

The record before this Court does not reflect the outcome of any further proceedings, either before the department itself or of any subsequent appeal to superior court. Counsel for the appellant has informed us at oral argument, however, that appellant received notice on June 8, 1978, that his license had been suspended "due to his failure to attend a hearing" held by the department in Phoenix on June 1, 1978.

■ Additional facts relating to the issues raised in this appeal will be set forth as part of the discussion of those issues. Before proceeding, however, we raise a threshold problem: whether the appeal to this Court should be dismissed as moot. The only relief available from the special action in superior court would have been an injunction preventing the department from suspending appellant's license. Inasmuch as the appellant has failed in his efforts to prevent the department's action and the license is now suspended, this appeal is moot, in a technical sense at least. This Court recognizes, however, that the decision to dismiss an appeal on the basis of mootness is largely a discretionary one. *See* Note, *The Mootness Doctrine in a State Court,* 13 Ariz.L.Rev. 464, 467–8 (1971). For a variety of reasons, including this Court's concern that the procedural confusion exemplified by this case should not recur, we shall discuss the issues in this case with a view toward resolving how a due process claim like appellant's may be raised and decided within the Arizona judicial system.

The narrow issue presented to this Court by this appeal is whether the trial court erred when it dismissed appellant's special action complaint. To answer this question fully, one must consider the nature of appellant's claim for relief, the scope and amenability of the procedural device he selected for raising his claim, and whether he

2. A.R.S. § 28–1122 B permits a person aggrieved by an order or act of the director in administering the financial responsibility law to obtain a trial *de novo* in superior court "to determine whether the order or act is lawful and reasonable." A.R.S. § 41–1010A(1) provides in part as follows:

"A hearing may be conducted in an informal manner and without adherence to the rules of evidence required in judicial proceedings. *Neither the manner of conducting the hearing* nor the failure to adhere to the rules of evidence required in judicial proceedings *shall be grounds for reversing any administrative decision or order* providing the evidence supporting such decision or order is substantial, reliable, and probative." (Emphasis added).

had alternative means to obtain a judicial determination of the merits of his claim. Appellant has raised an objection to the procedures of an Arizona administrative agency that is grounded on federal constitutional principles, and has as yet not obtained a final judicial response to his objection. For these reasons, the case invites a reexamination of several principles of Arizona procedural law within a context of state judicial review of administrative actions.

## THE NATURE OF THE DUE PROCESS CLAIM

Although we do not decide the merits of appellant's due process objection, an understanding of the nature of the claim is a necessary background to any discussion of whether the claim should be decided by special action or by appeal following the administrative hearing and decision. It is also helpful to bear in mind that appellant's "right" is not an absolute right to a driver's license, but rather a conditional right to keep his license if he can show that there is no reasonable possibility that a judgment will be rendered against him as a result of the accident.

The actions which may be taken by the department in administering the law and suspending appellee's license are governed by the Administrative Procedure Act, A.R.S. §§ 41–1001 et seq. See Brown v. Superior Court, 22 Ariz.App. 72, 523 P.2d 799 (1974), in which this Court characterized the administrative proceeding contemplated by the statutes for contested cases as "fully adequate [to meet] all constitutional due process requirements." 22 Ariz.App. at 74, 523 P.2d at 801. Appellant does not argue that affording him all the rights provided in the APA, including the right to appear in person and not to compel the attendance of witnesses by subpoena, would not satisfy the requirements of the due process clause. Instead, he alleges that requiring the payment of fees as a condition for the exercise of those rights, coupled with the added expenses associated with travel to Phoenix, which in this case would require a round trip of approximately 400 miles, render it economically impossible for indigents like himself to exercise his fair hearing rights, and that therein lies a denial of due process.

In Burri v. Campbell, 102 Ariz. 541, 434 P.2d 627 (1967), the Arizona Supreme Court sustained the Motor Vehicle Division's administrative policy of holding all financial responsibility hearings in Phoenix against a challenge that the practice violated due process. The Burri decision relied heavily upon a rational of administrative convenience. There was no allegation in Burri, however, that the plaintiff was indigent and thus unable to attend a hearing in Phoenix. Possibly because of this, the Court included the following caveat in its decision:

"It is not difficult to conceive of a situation whereby it could be a violation of procedural due process to require that a financial responsibility hearing be held in Phoenix. We are not convinced, however, that that situation is now before us."

102 Ariz. at 543, 434 P.2d at 629

Following the Burri decision, the United States Supreme Court in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) held that due process prohibited a state from requiring indigents to pay court filing fees as a precondition for obtaining a divorce. Thereafter, in United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court indicated that due process does not require that indigents be permitted full access to the court system under all circumstances and to the same degree that non-indigents enjoy. The holding in Kras was that due process does not compel the waiver of bankruptcy filing fees for an indigent seeking discharge of his debts. Read together, Boddie and Kras have been interpreted as establishing a due process test in an indigency situation that inquires into the importance of the interest at stake in the judicial proceeding as well as whether the proceeding itself is the exclusive means for protecting that right. See, e. g., Note, Indigents and Filing Fees: Constitutional Compulsion and Other Remedies, 1974 Ariz.St.L.J. 241; The Supreme Court,

*1972 Term,* 87 Harv.L.Rev. 57 (1973). *See also Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), in which the Court sustained a state's appellate court filing fee for appeal from an administrative hearing on the basis that the administrative hearing had already provided the indigent with a meaningful opportunity to be heard.

■ Applying these principles to appellant's situation, it is obvious that due process will not necessarily require that the department hold its hearing at a location most convenient to the appellant and to finance appellant's costs at public expense simply because appellant's indigency would otherwise prevent him from participating to the same extent as a nonindigent. Nevertheless, the issue still remains whether due process is satisfied if this indigent appellant is not at some point afforded a meaningful opportunity to present his evidence relating to the possibility of a judgment being rendered against him.

### THE SPECIAL ACTION IN SUPERIOR COURT

"Special Action" is a label assigned to this state's simplified procedural rules for obtaining extraordinary judicial relief. Special action proceedings have replaced the traditional proceedings of certiorari, mandamus and prohibition, but have not enlarged the scope of relief formerly available under those writs. *See* Rule 1(a), Arizona Rules of Procedure for Special Actions.

■ When a special action is initiated in an appellate court by petition, the court must first decide whether to accept jurisdiction of the merits of the claim before it proceeds to decide the merits. *See* § 7.3, *Arizona Appellate Handbook.* As a general rule, an appellate court's decision regarding whether or not it will entertain the merits of a non-statutory special action is a discretionary one. Similarly, when a special action is initiated by complaint in superior court the judge must first exercise his discretion and decide whether to consider the case on its merits. *See generally State ex rel. Dean v. City Court of the City of Tucson,* 123 Ariz. 189, 598 P.2d 1008 (1979).

■ Thus, when a special action initiated in superior court is subsequently appealed, such as the case at bar, the appellate court must conduct a bifurcated review. It must first determine whether the superior court in its discretion assumed jurisdiction of the merits of the claim. If so, then the determination of the merits may properly be reviewed. If not, then there exists no trial court determination for the appellate court to review, and the sole issue on appeal is whether the trial court abused its discretion when it declined to accept jurisdiction. *See, e. g., Genda v. Superior Court, County of Pima,* 103 Ariz. 240, 439 P.2d 811 (1968); *State Board of Technical Registration v. McDaniel,* 84 Ariz. 223, 326 P.2d 348 (1958); *Armstrong v. City Court of the City of Scottsdale,* 118 Ariz. 593, 578 P.2d 1022 (App.1978).

■ In this case, while it is uncertain what the intent of the trial judge was when he dismissed the complaint, and both parties on appeal have largely confined their arguments to the merits of the due process issue, we have concluded that the trial judge's action was a discretionary decision to decline jurisdiction,[3] and we affirm his decision in the special action on the basis that the appellant had available an adequate remedy by appeal.[4]

---

3. The conclusion is further supported by subsequent events in the trial court. Following the dismissal of the special action complaint, appellant attempted to obtain a judgment from the trial court to the effect that due process had not been violated, claiming that such a judgment was necessary in order that he might appeal it. The trial judge declined to do so and made a minute entry to that effect. This Court in 1 CA–CIV 4181 ultimately dismissed an appeal from that order on the grounds that it was nonappealable.

4. Were we to conclude, however, that the due process issue could not subsequently be raised, it would be necessary to reconsider the scope of the trial court's discretion to refuse to decide the issue in a special action. As Justice Holmes once observed in another context:

> "[I]t is plain that a State cannot escape its constitutional obligations by the simple device of denying jurisdiction in such cases to

APPEAL FROM THE LICENSE SUSPENSION

 As appellant correctly pointed out in his complaint, A.R.S. § 28–1122 affords him an appeal to superior court following suspension of his license by the department. He urged, however, that this appeal was inadequate because A.R.S. § 41–1010A(1) would preclude him from raising the issue of alleged constitutional inadequacy of the department's hearing procedures. We conclude that this is erroneous, and that in an appeal under § 28–1122 appellant would have the right to fully raise and have decided in the county of his residence the issue of whether the department's hearing procedures conform to the requirements of the due process clause.

As a matter of statutory interpretation, we do not believe the language of A.R.S. § 41–1010A(1) can be construed as precluding a due process challenge. That part of the statute to the effect that "the manner of conducting the hearing" should not be grounds for reversing the agency's decision is, in our opinion, simply a legislative recognition and affirmance of the general principle that administrative proceedings are usually informal and need not conform to the stricter rules of evidence and procedure that have been developed for judicial proceedings. The provision will not shield an agency's action from the more fundamental requirement of fairness and a meaningful opportunity to be heard that the due process clause guarantees.

The trial court's judgment of dismissal is affirmed.

EUBANK and FROEB, JJ., concur.

Courts otherwise competent." *Kenney v. Supreme Lodge of the World, Order of Moose,* 252 U.S. 411, 40 S.Ct. 371, 372, 64 L.Ed. 638 (1920).