925 P.2d 751

Captain LEWIS, a married man,
Plaintiff–Appellant,

v.

**ARIZONA DEPARTMENT OF ECO-NOMIC SECURITY and Charles Co-wan, Director, Defendants–Appellees.**

No. 1 CA–CV 94–0543.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 3, 1996.

Reconsideration Denied Oct. 28, 1996.

Howard R. Wine (formerly of Snell & Wilmer), Tucson, for Plaintiff–Appellant.

Grant Woods, Attorney General by Robert S. Segelbaum, Daniel W. Pozefsky, Assistant Attorneys General, Phoenix, for Defendants–Appellees.

## OPINION

GRANT, Judge.

Appellant Captain Lewis ("Lewis"), a blind citizen of Arizona,[1] filed this special action in the superior court, challenging the statutory authority of Arizona's Department of Economic Security ("DES") to restructure its delivery system for providing services for blind and visually impaired individuals. Lewis contended that the restructuring violated a non-discretionary duty imposed on DES pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 46–134(A)(4).

The superior court granted summary judgment for DES, finding that A.R.S. section 41–1953(A) authorizes the director of DES to restructure the delivery of services required to be furnished pursuant to A.R.S. section 46–134(A)(4). Lewis appeals from this judgment and from the earlier denial of his request to conduct discovery.

## FACTS AND PROCEDURAL HISTORY

In 1937, the Arizona Legislature first enacted legislation, the predecessor to A.R.S. section 46–134(A)(4), authorizing services to be provided to the blind. This legislation provided in relevant part that the State Department of Social Security and Welfare should develop any agencies it deemed necessary to further the goal of providing social services to the blind, including specific services enumerated in the statute. The statute also directed the department to cooperate with similar agencies already established to provide these services. *See* 1937 Ariz. Sess. Laws, Ch. 69, § 7. In 1948, the legislature created the Department of Public Welfare and substituted it as the department responsible for overseeing the furnishing of services for the blind. *See* 1948 Ariz. Sess. Laws, 7th S.S., Ch. 20, § 1. By 1961, the statute requiring the Department of Public Welfare to develop agencies for providing services to the blind had been renumbered as A.R.S. section 46–134(A)(4). *See* 1961 Ariz. Sess. Laws, Ch. 109, § 1. This statutory provision was not otherwise changed in any material respect between 1937 and 1972.

In 1972, the legislature passed a massive piece of legislation introduced as Senate Bill 1068. In this act, the legislature amended, added, and repealed numerous statutes found in several of the titles of the Arizona Revised Statutes. *See* 1972 Ariz. Sess. Laws, Ch. 142. In its statement of purpose for the act, the legislature stated, in relevant part, that "[t]he purpose of this act is to provide an *integration of direct services to the people of this state in a pattern that would reduce duplication of administrative efforts, services*

---

1. Although this special action was filed by only one petitioner, Appellant Captain Lewis, it may have repercussions for others, notably the Arizona Association of Workers with the Blind, and the Arizona Department of Public Welfare and its Division of Rehabilitation for the Visually Impaired.

and expenditures." *See* 1972 Ariz. Sess. Laws, Ch. 142, § 1.

Most significantly, by this act, the legislature established DES, pursuant to A.R.S. section 41–1952(A). *See* 1972 Ariz. Sess. Laws, Ch. 142, § 2. A.R.S. section 41–1953(D) specified that DES would succeed to the authority, powers, duties and responsibilities of a specific group of agencies and departments previously created by statute, including the Department of Public Welfare; subsection (E) of that statute provided that "[i]n the Arizona Revised Statutes, references to the agencies and departments listed in subsection D shall be deemed to be references to the Department of Economic Security or its appropriate divisions, offices or organizational units." 1972 Ariz. Sess. Laws, Ch. 142, § 2. A.R.S. section 41–1954 provided that in addition to the powers and duties of the agencies listed in A.R.S. section 41–1953(D), DES would administer a number of specified services including:

> Rehabilitation services which shall include vocational rehabilitation services and sections for the blind and visually impaired, communication disorders, correctional rehabilitation and other related functions in furtherance of programs under the vocational rehabilitation act, as amended, the Randolph–Sheppard Act, as amended, and other related federal acts and titles.[2]

1972 Ariz. Sess. Laws, Ch. 142, § 2. Also of significance, the legislature provided in A.R.S. section 41–1953(A) as follows:

> The director may establish, abolish or reorganize the positions or organizational units within the department to carry out the functions provided by section 41–1954, subject to legislative appropriation, if in his judgment such modification of organization would make the operation of the department more efficient, effective or economical. The director or his deputy shall enforce cooperation among the divisions in

the provisions and integration of all functions on the district and local level.

1992 Ariz. Sess. Laws, Ch. 142, § 2.

One of the multitude of other statutes amended by the passing of this act was A.R.S. section 46–134. The portion of this statute authorizing the provision of services to the blind was amended to provide as follows:

> [DES] shall:
>
> \*  \*  \*  \*  \*  \*
>
> 3. Develop a section of rehabilitation for the visually impaired which shall include a sight conservation section, a vocational rehabilitation section in accordance with the Federal Vocational Rehabilitation Act, a vending stand section in accordance with the Federal Randolph–Sheppard Act, an adjustment service section which shall include rehabilitation teaching and talking book machine services and other social services deemed necessary, and shall cooperate with similar agencies already established. The administrative officer and staff of the section for the blind and visually impaired shall be employed only in the work of that section.

1992 Ariz. Sess. Laws, Ch. 142, § 62. Under the clear language of this amendment to A.R.S. section 46–134(A)(3), DES was to develop a specific organizational unit to provide the services required by this statute to the blind and visually impaired. The administrative officer and staff of this organizational unit were to have no duties other than those of providing these services to the blind and visually impaired.[3]

Pursuant to this statute, in 1973, DES established an organizational unit to provide services for the blind and visually impaired, administered and staffed by personnel employed solely to provide these services. The services for the blind and visually impaired ("SBVI") operated within a larger organizational unit known as the Rehabilitation Ser-

---

**2.** The current designation of this provision is A.R.S. section 41–1953(A)(1)(d), and it will hereinafter be referred to as such.

**3.** To date, the only changes that have occurred to this statutory subsection since this amendment in 1972 are that the "talking book machine ser-

vices" have been removed from its provisions and the subsection has been renumbered as subsection "4" of A.R.S. section 46–134. Henceforth, in this opinion, this statute will be referred to by this current numbering.

vices Administration ("RSA"), which in turn was part of the Division of Employment and Rehabilitation Services of DES.

Beginning in the late 1980's, vocational rehabilitation and independent living rehabilitation services for blind and visually impaired individuals in Arizona came under increasing criticism by consumer groups and other interested parties. In the fall of 1991, in response to inquiries by both the executive and the legislative branches of state government, the director of DES requested that the RSA conduct a review of the SBVI to determine what, if anything, should be done to improve the situation.

Based on the findings of the RSA management review team assigned to the task, whose findings were then reviewed and verified by the RSA's Division of Management Review, the director of DES authorized the restructuring of the SBVI to be effective August of 1992, with the aim of decentralizing the delivery of services. The director believed that this step would improve accessibility, responsiveness and accountability to blind and visually impaired individuals throughout the state, as well as reduce administrative costs. The SBVI was modified to function merely in a support services role. SBVI's only employee would be the section manager whose responsibilities would include the coordinating, monitoring, and evaluating of services; the section manager would report to the RSA Deputy Administrator. The actual responsibility for managing the furnishing of the various services required by statute was transferred to the RSA Deputy Administrator and other specified management personnel within the RSA.

The staff providing the services was no longer part of the SBVI, but was considered personnel of the RSA. As an immediate result of the restructuring, a slightly larger number of personnel was employed exclusively in the work of providing services to the blind and visually impaired. Additionally, however, RSA staff which was employed to provide services to individuals with other types of disabilities received special training, and the staff now was providing services to blind and visually impaired individuals in remote areas of the state which were previously unserved. Lewis claims that on August 1, 1992, DES dismantled the "section of rehabilitation for the visually impaired."

The 1992 restructuring created a larger staff providing services for the blind and visually impaired; however, the services are no longer being provided by a separate organizational unit administered and staffed solely by personnel employed only to do that particular work. For that reason, Lewis brought suit complaining that DES was violating a non-discretionary duty imposed on it by the Blind Services Statute, A.R.S. section 46–134(A)(4). In denying the relief requested, the trial court concluded as follows:

> The Court finds that the Director of DES has the authority to restructure the organization pursuant to A.R.S. § 41–1953(A). There is no showing that legislative intent and the clear meaning of A.R.S. § 41–134 have been violated in terms of actual delivery of services, or compliance with federal regulations, as set forth in the state statute.
>
> The true test of compliance with the statutory mandates in this instance is to be measured by the actual delivery of services which are intended to serve the included population.

## ISSUES

I.   Does the Blind Services Statute require DES to maintain an operationally separate agency whose administrator and staff are employed only in work with the blind?

II.  Has DES violated the mandate of the Blind Services Statute?

III. Did the trial court abuse its discretion by denying Lewis the right to conduct discovery?

## DISCUSSION

**I.  The Blind Services Statute (A.R.S. section 46–134(A)(4)) does not require DES to maintain an operationally separate agency whose administrator and staff are employed only in work with the blind.**

Lewis appeals from an adverse ruling on his petition for special action to prevent the

1992 restructuring of DES' delivery of services to the blind and visually impaired. Because the trial court accepted jurisdiction and addressed the merits of the claim, we too review the merits. *State v. Johnson,* 184 Ariz. 521, 911 P.2d 527 (App.1994); *Bilagody v. Thorneycroft,* 125 Ariz. 88, 92, 607 P.2d 965, 969 (App.1979).

■ Our standard of review is *de novo.* In this case there were no disputed issues of fact. The trial court denied relief to Lewis based on its interpretation of the relevant statutes. Because issues of statutory interpretation are issues of law, we reach our own determination as to the proper interpretation of these statutes. *Hartford Acc. & Indem. Co. v. Federal Ins. Co.,* 172 Ariz. 104, 107, 834 P.2d 827, 830 (App.1992).

■ The primary task in construing a statute is to identify and give effect to legislative intent. *Martin v. Martin,* 156 Ariz. 452, 752 P.2d 1038 (1988). If the language of the statute is clear and unambiguous, we must give it effect without resorting to any rules of statutory construction. *State ex rel. Fox v. The New Phoenix Auto Auction, Ltd.,* 185 Ariz. 302, 916 P.2d 492 (App.1996); *Zamora v. Reinstein,* 185 Ariz. 272, 915 P.2d 1227 (1996). If further guidance is needed, we will look to matters such as the statute's historical background, the policy behind the statute and the evil that it was designed to remedy. *State v. Takacs,* 169 Ariz. 392, 819 P.2d 978 (App.1991). Whenever possible, we adopt a construction of a statute that reconciles it with other statutes, giving force to all statutes involved. *Achen–Gardner, Inc. v. Superior Court,* 173 Ariz. 48, 839 P.2d 1093 (1992).

■ The issue in this case is not whether A.R.S. section 46–134(A)(4), by itself, can be interpreted as allowing the director of DES discretion to decide how best to deliver services to the blind and visually impaired, or allowing him to decide whether to continue to use a separate organizational unit, administered and staffed only by persons employed solely to provide such services. Lewis claims that for the first time in 19 years, since the enactment of the Blind Services Statute, rehabilitation generalists were assigned work

that by law was to have been performed only by personnel employed exclusively in the work of rehabilitation of the blind. Lewis further claims that because many of the skills and methods that foster effective rehabilitation of the blind are neither learned nor easily adapted to the rehabilitation of other disabilities, there is a recognized institutional tendency to give blind services short shrift whenever the blind are treated as just one small constituency among the many that a general rehabilitation agency must serve. DES argues that this complaint ignores the fact that the blind may also have other (often multiple) disabilities that require multiple skills by staff in order to foster rehabilitation.

Both the wording of this statute and the legislative history of the 1972 amendment to A.R.S. section 46–134 leave no doubt that the legislature, at that time, was convinced that the blind and visually impaired would be best served by the development of a separate organizational unit to provide the services authorized by the statute, a unit to be administered and staffed by personnel employed only to serve the blind and visually impaired. The legislature directed DES to develop such a section through this amendment to A.R.S. section 46–134(A)(4).

As we previously noted in this opinion, however, within the same legislation with which the legislature directed DES to develop the above-described section to deliver services to the blind and visually impaired, the legislature also gave the director of DES the authority, pursuant to A.R.S. section 41–1953(A), to "establish, abolish or reorganize the positions or organizational units within the department to carry out the functions provided by section 41–1954 ... if in his judgment such modification of organization would make the operation of the department more efficient, effective or economical." The real issue in this case, therefore, is whether the legislature meant for A.R.S. section 41–1953(A) to have any effect on A.R.S. section 46–134(A)(4), or whether it meant to exclude the latter from the former's provisions.

The expressed overriding purpose of the entire act, of which both of these statutory provisions are a part, is "to provide an inte-

gration of direct services to the people of this state in a pattern that would reduce duplication of administrative efforts, services and expenditures." To this end, although the legislature in most instances has directed what the initial structure would be for the delivering of various services by the newly created DES, the legislature gives the director the authority to make whatever structural changes needed for a more effective delivery of any of the services DES administers pursuant to A.R.S. section 41–1954. Clearly, SBVI, which is specially authorized within A.R.S. section 46–134(A)(4), falls within the services for the blind and visually impaired administered generally by DES pursuant to A.R.S. section 41–1954(A)(1)(d).

■ A general comprehensive statute and a special statute dealing with part of the same subject more specifically should generally be read together, and harmonized if possible, to effect legislative intent. *Arden–Mayfair, Inc. v. State Dept. of Liquor Licenses and Control*, 123 Ariz. 340, 599 P.2d 793 (1979). This is particularly true when, as here, the blind services statute was amended in the same legislative act which created DES. *State v. Jaastad*, 43 Ariz. 458, 32 P.2d 799 (1934).

Nothing within the language of any of these statutes indicates that A.R.S. section 46–134(A)(4) should be excluded from the provisions of A.R.S. section 41–1953(A). If the legislature had intended to make an exception for A.R.S. section 46–134(A)(4), the Blind Services Statute, it could easily have done so. *See, e.g., State v. Korzep*, 165 Ariz. 490, 494, 799 P.2d 831, 835 (1990) (holding that had the legislature intended section 13–411 to apply only when force is used to prevent the commission of crimes by nonresidents, it could easily have said so); *Smith v. Superior Court*, 17 Ariz.App. 79, 82, 495 P.2d 519, 522 (1972) (holding that had the legislature intended the immunity statute to apply only to a limited class of judicial proceedings, namely criminal prosecutions or proceedings in which the state was a party, it could easily have done so). Since the legislature did not expressly exclude A.R.S. section 46–134(A)(4) from the provisions of A.R.S. section 41–1953(A), we agree with the trial court's con-

clusion that the latter statute authorized the director of DES to restructure the delivery of SBVI in the manner in which he has chosen in this case.

## II. DES has not violated the mandate of the Blind Services Statute.

■ The trial court found as crucial to its decision the fact that all DES had done in this case was restructure the organization for the delivery of the services required to be delivered under current A.R.S. section 46–134(A)(4), and that DES has not tried to change *what* services were delivered. We agree with the trial court on this point. As our supreme court has held, the legislature may not delegate the authority to enact laws to a government agency, but it can give agencies discretion as to execution of the laws. *Peters v. Frye*, 71 Ariz. 30, 35, 223 P.2d 176, 179 (1950). Lewis claims A.R.S. section 41–1953(A) is merely permissive, while the Blind Services Statute, A.R.S. section 46–134(A)(4), is mandatory. We disagree. In restructuring the delivery of SBVI, the director of DES was merely exercising the authority lawfully delegated to him to make changes in how to administer the services he was required by law to provide.

## III. The trial court did not abuse its discretion by denying Lewis the right to conduct discovery.

■ The final issue Lewis raises on appeal is whether the trial court abused its discretion by denying his request to conduct discovery. After filing his petition, Lewis sought a special order to allow him to propound up to 15 interrogatories, 25 requests for admission and 1 request for production of documents pursuant to Rules of Procedure for Special Actions, Rule 4(e), which provides in relevant part that "[i]f a triable issue of fact is raised in an action under this Rule, it shall be tried subject to special orders concerning discovery." Lewis did not provide the trial court with information about the type of information he sought and why it was necessary to his case. The trial court denied Lewis' request on the basis that no good cause had been shown, and Lewis made no attempt thereafter to supply additional infor-

**616**

mation from which the trial court might find good cause for allowing the requested discovery.

■ A trial court has broad discretion in matters of discovery, and its decision will not be disturbed absent a showing of an abuse of that discretion. *Plattner v. State Farm Mut. Auto. Ins. Co.,* 168 Ariz. 311, 319, 812 P.2d 1129, 1137 (App.1991). As this court noted in *Riggins v. Graham,* 20 Ariz.App. 196, 198, 511 P.2d 209, 211 (1973), this is no less true when discovery is requested in a special action proceeding in the superior court. In *Riggins,* we also noted that the 1969 State Bar Committee note following Rule 4(e) explains that only in rare situations will discovery be justified in special action proceedings in the superior court. We additionally observed:

> The very nature of a special action is a unique remedy designed for an unusual set of circumstances where the speedy determination of the issue is of prime consideration. To allow a wide range of discovery, attendant with the delays involved, would tend to defeat the very purpose of a special action.

*Id.*

Having reviewed the record, we find no abuse of discretion in the trial court's denial of Lewis' request to conduct discovery in this case. Moreover, the only issue presented in this case was one of law rather than of fact and information sought, as disclosed by Lewis in his appellate briefs, would not have affected the determination of this legal issue.

## CONCLUSION

For the reasons explained in this opinion, we affirm the rulings of the trial court. We hold that the trial court properly found that A.R.S. section 41–1953(A) authorizes the director of DES to restructure the delivery of services for the blind and visually impaired, which are required to be furnished pursuant to A.R.S. section 46–134(A)(4). We also hold there was no abuse of discretion by the trial court in denying Lewis' request for discovery.

NOYES and THOMPSON, JJ., concur.