973 P.2d 1194

**In re FRANK H., William H., Joseph A., Clinton L., Anthony D., Pablo T., John B., Gilbert F.**

Nos. 1CA–JV98–0055,   1CA–JV98–0056, 1CA–JV98–0057, 1CA–JV98–0058, 1CA–JV98–0079, 1CA–JV98–0088, 1CA–JV98–0097, 1CA–JV98–0104.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 3, 1998.

Review Denied March 23, 1999.

**434**

Richard M. Romley, Maricopa County Attorney by Patricia A. Nigro, Deputy County Attorney, Phoenix, Attorneys for the State

Kessler Law Office by Eric W. Kessler, Mesa, Attorneys for Frank H. and John B.

Dean W. Trebesch, Maricopa County Public Defender by Susan G. White, Deputy Public Defender, Suzanne Weschler Sanchez, Deputy Public Defender, Theresa M. Armendarez, Deputy Public Defender, Mesa, Attorneys for William H. and Anthony D.

Dean W. Trebesch, Maricopa County Public Defender by Susan G. White, Deputy Public Defender, Suzanne Weschler Sanchez, Deputy Public Defender, Monique Kirtley, Deputy Public Defender, Mesa, Attorneys for Pablo T.

Roland Arroyo, Phoenix, Attorney for Joseph A.

Pamela G. Wiens and The Law Office of Steven K. Holding by Steven K. Holding, Phoenix, Attorneys for Gilbert F.

## OPINION

TOCI, Judge

¶ 1 This appeal is a consolidation of eight cases arising out of juvenile court. In each case, the state alleges that the court erred by setting a deadline for victims to assert claims for restitution from the juvenile. For the reasons that follow, we affirm the trial courts' decisions.

### I. FACTS AND PROCEDURAL HISTORY

¶ 2 Each of the eight cases in this appeal involves one juvenile who has been adjudicated delinquent. The specific facts that gave rise to the juveniles' delinquency are not at issue here. In each case, the state alleged that the juvenile's delinquent actions caused one or more victims to suffer physical or financial injuries.

¶ 3 Five of the juveniles entered into plea agreements. Each agreement provided for the juvenile to pay restitution to the victim or victims in an amount not to exceed a limit specified in the agreement. Of these juveniles, three were given probation and two were sent to the department of juvenile corrections.

¶ 4 Three of the juveniles were found delinquent based on either an admission by the juvenile or the findings at an adjudication hearing. None of these juveniles entered plea agreements. Of these three, two were given probation and one was sent to the department of juvenile corrections.

¶ 5 At each juvenile's disposition hearing, the judge set a deadline by which a victim

seeking restitution had to submit a verified victim statement disclosing the extent of the victim's damages. The deadlines in the cases varied, but each deadline fell between seven and forty-five days after the disposition hearing. Most of the judges stated that a victim who failed to submit a statement would lose his or her right to restitution.

## II. DISCUSSION

### A. Standing

■ ¶ 6 Four of the juveniles contend that the state does not have standing to appeal the restitution deadline because the state is not an "aggrieved party" as required by Arizona Revised Statutes Annotated ("A.R.S.") section 8–236(A)(Supp.1997).[1] We disagree.

¶ 7 The juveniles cite *State v. Lamberton,* 183 Ariz. 47, 899 P.2d 939 (1995), to support their contention. In *Lamberton,* the state and a victim each filed a separate appeal challenging the trial court's granting of post-conviction relief to the defendant. *Id.* at 48, 899 P.2d at 940. This court dismissed the victim's appeal, and our supreme court upheld the dismissal, holding that the Victims' Bill of Rights in the Arizona Constitution did not make victims "parties" to criminal proceedings. *Id.* at 49, 899 P.2d at 941. Additionally, our supreme court held that the victim was not "aggrieved" because the judgment did not "operate to deny [the victim] some personal or property right, nor ... impose a substantial burden upon her." *Id.* The court stated that the parties to a criminal action are the defendant and the state. *Id.* at 50, 899 P.2d at 942.

■ ¶ 8 Contrary to the juveniles' contention, *Lamberton* supports rather than refutes the state's claim of standing in this case. First, the *Lamberton* court dismissed the victim's, not the state's appeal. Here, the state filed the appeals. Second, the state in this case is aggrieved because the lower courts' rulings, if incorrect, impose a substantial burden upon the state. The requirement that a juvenile provide a victim with restitution is based on both reparative and

rehabilitative objectives. *See State v. Iniguez,* 169 Ariz. 533, 536, 821 P.2d 194, 197 (App.1991). The state has an interest in both of these objectives. Thus, if a court wrongfully denies an award of restitution, the state suffers. We therefore conclude that the state has standing to appeal the restitution issue.

### B. The Restitution Deadline

■ ¶ 9 The state contends that setting a deadline for victims to assert or substantiate a claim for restitution is both "artificial and contrary to law." Such a deadline, argues the state, violates both the court's statutory obligation to impose restitution and the victim's right to receive it. Although setting a deadline is an exercise of the judges' discretionary power, the state does not argue that the judges committed an abuse of discretion based on the facts in these particular cases. Rather, the state asserts that setting a deadline for restitution claims is always improper as a matter of law. Thus, we review this issue *de novo. See Lewis v. Arizona Dep't of Econ. Sec.,* 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996). We hold that in a juvenile proceeding, a judge may set a reasonable deadline for restitution claims in order to balance the interests of the juvenile with the interests of the victim.

¶ 10 The state relies primarily upon *State v. Contreras,* 180 Ariz. 450, 885 P.2d 138 (App.1994). In *Contreras,* this court held that the trial court acted within its discretion by modifying the conditions of the adult criminal defendant's probation to include the requirement that he pay restitution. *Id.* at 453–54, 885 P.2d at 141–42. Additionally, we held in *Contreras* that a victim of a crime does not waive his or her right to mandatory restitution merely by failing to respond to a letter from the county attorney's office requesting a valuation of losses. *Id.* at 454, 885 P.2d at 142. We based our decision in *Contreras* primarily on two important factors: (1) victims of a crime have a constitutional right to receive restitution from criminal defen-

---

1. Section 8–236(A) provides: "Any aggrieved party in any juvenile court proceeding under this

title may appeal from a final order of the juvenile court...."

dants; and (2) the court in a criminal case has a statutory duty to reimburse a crime victim for the victim's "full economic loss." *See id.* at 453–54, 885 P.2d at 141–42 (citing Ariz. Const. art. 2, § 2.1(A)(8); A.R.S. § 13–603(C)). For the following reasons, we find that the state's reliance on *Contreras* is misplaced.

■ ¶ 11 Our decision in *Contreras* does not prohibit a juvenile judge from setting a deadline for restitution claims. In *Contreras,* we held that the trial court acted within its discretion by awarding restitution and that the victims did not waive their right to restitution. This specific holding does not imply that a juvenile judge can never deny a restitution claim or that a victim's right to restitution is absolute. Generally, legal rights may be subject to procedural rules that, if not followed, may bar a claimant from asserting such rights. *See Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Neither the Arizona Revised Statutes nor the Rules of Procedure for the Juvenile Court provides procedural rules for governing the timing of restitution claims and awards. Thus, setting a deadline in some cases may be a necessary procedural tool.

■ ¶ 12 Because of the unique nature of the juvenile justice system, prohibiting a judge from setting a deadline for restitution claims would jeopardize a juvenile's due process rights under the Rules of Procedure for the Juvenile Court. A juvenile may not appeal until a final order has been entered. *See Maricopa County, Juvenile Action No. J–74222,* 20 Ariz.App. 570, 571, 514 P.2d 741, 742 (1973). If restitution is an issue, the final order is the restitution order. *See In re Eric L.,* 189 Ariz. 482, 484, 943 P.2d 842, 844 (App.1997). Until such an order is entered, no appeal may be taken. *Id.* The state asserts that "[t]he restitution claims of the victims can and should be considered when and if they are submitted to the court, regardless of any deadline." If we were to adopt the state's argument, a dilatory victim could potentially block a juvenile from appealing his delinquency adjudication until just before the juvenile court loses jurisdic-

tion on the juvenile's eighteenth birthday. This situation would arbitrarily nullify many juveniles' statutory rights to appeal. *See* A.R.S. § 8–236.

¶ 13 Furthermore, a speedy disposition is essential to achieving one of the primary goals of the juvenile justice system: protection of the child through treatment and rehabilitation. *See In re D.H.,* 666 A.2d 462, 472 (D.C.App.1995). This court has stated, "the philosophy underlying the entire juvenile delinquency process is one of speedy disposition and treatment for the juvenile involved." *Juvenile Action No. J–74222,* 20 Ariz.App. at 571, 514 P.2d at 742. A report by the Office of Juvenile Justice and Delinquency Prevention, cited by the juveniles, supports this philosophy:

> Issues of case processing time and delay are applicable to all court proceedings but are especially important to the juvenile court. Children and adolescents often experience the passage of time differently from adults. To be effective, the response to a juvenile's negative behavior must be made quickly. If that response is significantly delayed, its corrective impact is apt to be reduced.

Office of Juvenile Justice and Delinquency Prevention, *Juvenile Offenders and Victims: A National Report* 84 (1995). Because rehabilitation is one of the goals of restitution, allowing restitution claims long after the disposition hearing would render this goal less attainable.

¶ 14 The state contends that allowing a restitution claim at a later date does not create a new burden for the juvenile because the juvenile court already has jurisdiction to "modify restitution until the juvenile's eighteenth birthday." The state, however, has misinterpreted the statute, which provides that the juvenile court retains jurisdiction to modify "the *manner* in which restitution payments" are made. A.R.S. § 8–344(A) (Supp. 1997) (emphasis added). This statute does not allow a court to make a new order of restitution; the statute refers to restitution already ordered. *See id.*

¶ 15 In conclusion, we hold that a juvenile judge may set a reasonable deadline in order

to protect the rights of a juvenile to a speedy disposition and a prompt, expedited appeal. *See* A.R.S. § 8–236(C) (Supp.1997). In setting this deadline, the juvenile judge must balance the juvenile's rights against the victim's interest in receiving full or partial restitution. The judges in the cases now before this court properly considered both the juveniles' and the victims' interests. The court accommodated the victims' interests by allowing them varying periods of time beyond the disposition hearing to assert restitution claims. The court likewise accommodated the juveniles' interests by setting reasonable deadlines within which victims were required to submit any claims.

¶ 16   We caution the juvenile court that restitution claim deadlines must be reasonable under the specific circumstances of each case. If the state believes that a deadline is unreasonable, the state should present evidence to that effect to the juvenile court. Such evidence may include difficulties in providing notice to victims and reasonable inability of the victim or victims to submit a verified victim statement within the time allowed. With this evidence in the record, the juvenile court's restitution deadline can then be reviewed for abuse of discretion.

¶ 17   Here, the state presented no evidence that any affected victim would have made a substantiated restitution claim had the deadline not existed. Nor did the state present evidence that any victim had actually attempted to submit a statement within the deadline. Therefore, we affirm the decision of the trial court to foreclose the issue of restitution in each of these cases.

FIDEL, P.J., and GRANT, J., concur.